**Lorenzo L. MIXON, Nathaniel Brown, Dolores Figueroa, Joseph Hill, Jeffrie S. McKinzie, William P. Alston and Maureen Williams, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania and Kim Hanna Pizzingrilli, Secretary of the Commonwealth, Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 8, 2000.
Decided Sept. 18, 2000.

Samuel C. Stretton, West Chester, for petitioners.

Francis R. Filipi, Harrisburg, for respondents.

BEFORE: DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH, Judge, PELLEGRINI, Judge, FLAHERTY, Judge, LEADBETTER, Judge.

DOYLE, President Judge.

Before the Court en banc are the preliminary objections of Respondents, the Commonwealth of Pennsylvania and Kim

Pizzingrilli as Secretary of the Commonwealth, filed in response to a petition for review filed under our original jurisdiction. The Petitioners are six convicted felons who are present or former confinees (Convicted Petitioners) of the Pennsylvania Department of Corrections (DOC) and Maureen Williams (Petitioner Williams), a resident of Philadelphia and a black female elector [1] who is currently registered to vote. Ms. Williams resides in a voting district in which the majority of voters are black and Hispanic, frequently combining to vote in a block-type fashion.

The Convicted Petitioners consist of two incarcerated felons (Messrs. Mixon and McKinzie, collectively "Registered Felons") who are registered voters, but who are not "qualified absentee electors" under the Pennsylvania Election Code (Election Code); [2] two incarcerated felons (Messrs. Hill and Alston, collectively "Non-registered Felons") who may neither register nor obtain an absentee ballot under the Election Code and the Pennsylvania Voter Registration Act; [3] and two convicted felons (Messrs. Brown and Figueroa, collectively "Released Felons") who have been released from a state correctional institution, who are not presently registered to vote and who may not lawfully register to vote because of the Pennsylvania Voter Registration Act.

On June 21, 1996, one year prior to becoming eligible for parole, Petitioner Mixon was transferred by the DOC from confinement at the State Correctional Institution at Huntington (SCIH) to confinement at the DOC Community Correction Center at Third and Arch Streets in Philadelphia, to serve the remaining year of his minimum term. While on a temporary authorized absence from confinement, Petitioner Mixon voted at his Delaware

---

1. The terms "black female" and "black felons" are the terms used by Petitioners in their brief, and we will deferentially use these terms throughout this opinion.

2. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600–3591.

3. Act of June 30, 1995, P.L. 170 §§ 101–5109, 25 P.S. §§ 961.101–961.5109.

County polling place of record during the November 1996 general election. Subsequently his parole was denied and he was returned to Huntington. In April 1999, Petitioner Mixon submitted a written application for an absentee ballot to the Delaware County Bureau of Elections for the purpose of voting in the May 1999 primary election. His application was denied on the basis that he was not a "qualified absentee elector" pursuant to 25 P.S. §§ 2602(w) and 3146.1, which provide in pertinent part as follows:

> [T]he words "qualified absentee elector" shall in nowise be construed to include persons confined in a penal institution. . . .

25 P.S. § 2602(w).

> [T]he words "qualified absentee elector" shall in nowise be construed to include persons confined in a penal institution. . . .

25 P.S. § 3146.1.

Petitioner McKinzie is currently confined at SCIH and is a registered elector in Allegheny County. Prior to the November 1998 general election, he submitted a written application for an absentee ballot to the Allegheny County Election Division. His application was denied pursuant to 25 P.S. § 3146.1. In April 1999, he again submitted an application for an absentee ballot but, as of the date his petition was filed in this matter, he had received no reply.

Petitioners filed a complaint in equity on July 8, 1999, seeking declaratory relief challenging the sections of the Election Code that exclude felons confined in a penal institution from the definition of "qualified absentee electors," and the provisions of the Pennsylvania Voter Registration Act that bar a felon released from a penal institution less than five years from registering to vote, as unconstitution-al. Section 501 of the Pennsylvania Voters Registration Act precludes registration by an incarcerated felon within five years of release from incarceration by stating in pertinent part:

> § 961.501. Qualifications to register
>
> Eligibility.—A qualified elector who will be at least 18 years of age on the day of the next election, who has been a citizen of the United States for at least one month prior to the next election and who has resided in this Commonwealth and the election district where the qualified elector offers to vote for at least 30 days prior to the next ensuing election and **has not been confined in a penal institution for a conviction of a felony within the last five years** shall be entitled to be registered as provided in this chapter.

25 P.S. § 961.501 (emphasis added).

Petitioners also seek a permanent injunction barring enforcement of the above statutory provisions. Respondents have filed with this Court preliminary objections, challenging Petitioners' ability to maintain this action asserting: (1) that the petition for review fails to state a claim for which relief may be granted; and (2) that Petitioner Williams lacks standing to assert any claim in the petition for review because she is not a convicted felon.

The basic theories underlying these claims are that Article I, Section 5 of the Pennsylvania Constitution of 1968 [4] permits no modification of an elector's qualifications for voting, which are age and residency; that Article I, Section 25 of the Pennsylvania Constitution of 1968 [5] denies the General Assembly the authority to alter these qualifications without amendment to the Constitution; and that the language contained in Article VII, Section

---

**4.** Article I, Section 5 states: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

**5.** Article I, Section 25, states:
> § 25. Reservation of powers in people

To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate.

1 of the Pennsylvania Constitution of 1968 [6] only permits the General Assembly to enact laws governing the time and place of elections, but not the qualifications for electors. The Convicted Petitioners allege that a provision of the Pennsylvania Voting Rights Act requiring the disenfranchisement of felons, although facially neutral, has a disparate impact on black Pennsylvanians. They contend that there has been a sordid history of disenfranchisement in this country, largely directed at minorities. They challenge their disenfranchisement under the Pennsylvania Constitution of 1968,[7] which, they allege, permits voting as the fundamental right of electors who meet the constitutional requirements of age and residency. The Convicted Petitioners argue that Pennsylvania lacks a compelling reason to justify disenfranchisement of felons, and that the true reason for such state action is to impose a disproportionate disadvantage on blacks.[8] They also con-

tend that Article I, Section 25 of the Pennsylvania Constitution prevents the General Assembly from enacting laws that interfere with, or prevent, the free exercise of the right of suffrage. The Convicted Petitioners rely on *Winston v. Moore*, 244 Pa. 447, 91 A. 520 (1914), for the proposition that, pursuant to the free and equal clause of our Pennsylvania Constitution, the right to vote cannot be denied them.

The Convicted Petitioners also argue that when Article VII, Section 1 of the Pennsylvania Constitution, relating to voter qualifications, is read in tandem with *Winston*, no regulation or statute can operate to disenfranchise their votes. Moreover, they contend that Article VII, Section 14 [9] of the Pennsylvania Constitution, concerning absentee voting, does not disqualify from voting either a felon who is incarcerated or a felon who has been released but is still within five years of his incarceration. The Convicted Petitioners

---

**6.** Article VII, Section 1, reads as follows:

§ 1. **Qualifications of electors**

Every citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.

1. He or she shall have been a citizen of the United States at least one month.
2. He or she shall have resided in the State ninety (90) days immediately preceding the election.
3. He or she shall have resided in the election district where he or she shall offer to vote at least sixty (60) days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within sixty (60) days preceding the election.

**7.** We note here that none of the petitioners have raised *federal* constitutional issues.

**8.** The NAACP (*Amicus*), as an *amicus*, contends that the challenged provisions of the Election Code and the Voters Registration Act, which impose suffrage-denying qualifications, are devices that deny individuals the right to vote on the basis of race. *Amicus*

argues that selective prosecutions reinforced by racial profiling have resulted in larger numbers of black arrests and convictions, thus perpetuating the disproportionately higher number of black felons. *Amicus* alleges that vote dilution has been found to exist where an election practice results in dilution of minority voting strength, and that the legal system's failure to address the obvious racial inequities fostered by the felon disenfranchisement statutes undermines the criminal justice system's legitimacy for African Americans in Pennsylvania.

**9.** Article VII, Section 14, dealing with absentee voting, states:

The Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may, on the occurrence of any election, be absent from the State or county of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, are unable to attend at their proper polling places because of illness or physical disability or who will not attend a polling place because of the observance of a religious holiday or who cannot vote because of election day duties, in the case of a county employee, may vote, and for the return and canvass of their votes in the election district in which they respectively reside.

allege that Article I, Section 25 of the Pennsylvania Constitution effectively declares that suffrage is an inviolate right, free from regulation by the legislature and that only a constitutional amendment can change voting qualifications in this Commonwealth.

The Convicted Petitioners further maintain that Section 501 of the Voters Registration Act impliedly repeals the definition of "qualified absentee elector," and, moreover, contend that there is no compelling reason why Pennsylvania has denied suffrage only to felons sentenced to imprisonment rather than to probation, or permitted convicted felons who are registered to vote prior to incarceration to vote on their release, while those not registered to vote prior to incarceration may not register until five years following their release.[10]

Respondents argue that *Martin v. Haggerty,* 120 Pa.Cmwlth. 134, 548 A.2d 371 (1988), controls the outcome of the issues before us. Respondents also assert that "qualified absentee elector" is defined under the Election Code in relevant part: "Provided, however, That the words 'qualified absentee elector' shall in nowise be construed to include persons **confined in a penal institution** or a mental institution nor shall it in anywise be construed to include a person not otherwise qualified as a qualified elector in accordance with the definition set forth in section 102(t) of this act," 25 P.S. § 2602(w) (emphasis added), and that our Supreme Court in *Ray v. Commonwealth,* 442 Pa. 606, 276 A.2d 509 (1971), decided that the definition of "qualified absentee elector" as excluding persons confined in penal institutions, did not violate either the state or federal constitutions.

Finally, Petitioner Williams asserts that language contained in *Bergdoll v. Kane,*

557 Pa. 72, 731 A.2d 1261 (1999), supports her argument that she has standing to proceed in this matter based on vote dilution and her desire to protect the fundamental right to vote.

## I. The Registered Felons

 The starting point of our analysis is the presumption of constitutionality that all legislative enactments enjoy under both the rules of statutory construction and the decisions of our courts. *See* 1 Pa.C.S. § 1922(3); *Common Cause of Pennsylvania v. Commonwealth,* 668 A.2d 190 (Pa. Cmwlth.1995), *aff'd,* 544 Pa. 512, 677 A.2d 1206 (1996). Any party challenging a legislative enactment has a heavy burden, and legislation will not be invalidated unless it clearly, patently, and plainly violates the Constitution of this Commonwealth. Any doubts are to be resolved in favor of a finding of constitutionality. 1 Pa.C.S. § 1922(3). While deference is generally due the legislature, we are mindful that the judiciary may not abdicate its responsibility to ensure that government functions within the bounds of constitutional prescription under the guise of its deference to a coequal branch of government. *Pennsylvania AFL–CIO v. Commonwealth,* 691 A.2d 1023 (Pa.Cmwlth.1997).

We remark initially that the Registered Felons' position cannot prevail under the rule of *stare decisis.* As documented by Respondents, our State Supreme Court has specifically held in *Ray v. Commonwealth* that the definition of "qualified absentee elector" excludes persons confined in penal institutions. In *Ray,* the appellant was confined in a penal institution for an armed robbery conviction. He sought to secure an absentee ballot to facilitate voting and contended that the absentee ballot statute was unconstitutional because it prohibited him from voting as an absen-

---

10. We note here that the Convicted Petitioners declare that they are not proceeding on either a federal or state equal protection basis, but on the constitutional guarantee that no citizen shall suffer discrimination based on race or on the exercise of any civil right.

They allege that at trial, statistics will be presented to show the disproportionate number of minorities in the prison system. In this manner, they intend also to support the vote dilution claim of Petitioner Williams.

tee elector. Justice Barbieri, writing for the Court, found that the legislature had the power to define qualified electors. We are bound by that decision. In addition, this Court concluded in *Martin v. Haggerty* that provisions of the Election Code which excepted those confined in penal institutions from the definition of "qualified absentee elector" do not violate the Pennsylvania Constitutional provision that every citizen who meets enumerated age and residency requirements is entitled to vote in all elections, subject to such laws requiring and regulating registration of electors as the General Assembly may enact. The Convicted Petitioners urge us to reexamine *Martin v. Haggerty* and *Ray v. Commonwealth* in light of the flaws they contend exist in their reasoning.[11]

■ Although every citizen has a general right to vote, states have broad powers to determine the conditions under which the right of suffrage may be exercised, and an individual's criminality is a factor which a state may take into consideration in determining the qualifications of voters. *Lassiter v. Northampton County Board of Elections*, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959). Most ancient, medieval, and early modern societies conceived of disenfranchisement as a form of punishment. In Rome, an offender could be deprived of the right to vote if, as part of his censure, the label "infamia," the highest degree of dishonor, was cast upon him. *United States v. Cox*, 342 F.2d 167 (5th Cir.1965), *cert. denied sub nom, Cox v. Hauberg*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). During the middle ages, extreme punishments included deprivation of all civil rights and excommunication from the community. Later, England's attainder system maintained the loss of civil rights as a penalty, along with forfeiture of property and "corruption of blood." *McCafferty v. Guyer*, 59 Pa. 109 (1868). Modern thought perceives disenfranchisement of convicted felons, not as punishment, but rather as a "nonpenal exercise of the power to regulate the franchise." *Trop v. Dulles*, 356 U.S. 86, 97, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). As of November 1993, all but four[12] states deprive incarcerated offenders of the right to vote; thirty-five states disenfranchise non-incarcerated offenders, including those on probation and parole; and fourteen states disenfranchise ex-offenders for life. Andrew L. Shapiro, *Challenging Criminal Disenfranchisement Under the Voting Rights Act: A New Strategy*, 103 Yale L.J. 537 (1993).

In *Davis v. Beason*, 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637 (1890), the U.S. Supreme Court upheld the authority of the Idaho legislature to proscribe voter qualifications. Mr. Justice Field, writing for the

---

**11.** Petitioners argue that the analysis in *Ray* is flawed because it failed to fully utilize the holding in *Winston*. They maintain that, while the Supreme Court cited *Winston* 's first requirement that elections be free and equal, it failed to consider the remaining factors contained in the same quote, specifically that "the regulation of the right to exercise the franchise does not deny the franchise itself." *Winston v. Moore*, 244 Pa. at 457, 91 A. at 523. They contend that *Ray* never addresses the concept that the legislative enactments at issue here completely disenfranchise the confined felon or the felon who is on probation or parole, but within five years of release. We cannot agree. The legislative enactments at issue here do not completely disenfranchise the convicted felon, as is the case in fourteen of our sister states; it merely suspends the franchise for a defined period. Petitioners also assert that our decision in *Martin v. Haggerty* is wrongly decided because it is based on *Ray*.

**12.** Petitioners assert in their brief that New Hampshire is the most recent state to extend the franchise to incarcerated offenders. *See* Petition for Review, Exhibit E, *Fischer v. New Hampshire Civil Liberties Union*, New Hampshire Superior Court, October 27, 1998 (Unpublished). However, ignoring the fact that New Hampshire decisions lack precedent here and that unpublished decisions by any court may have limited, if any, precedential value, we note that the New Hampshire Supreme Court reversed this decision and determined that New Hampshire's felon disenfranchisement statutes were constitutional. *Fischer v. Governor*, 749 A.2d 321 (N.H.2000).

Court, cited with approval a territorial statute indicating that "no person under guardianship, *non compos mentis*, or insane, nor any person convicted of treason, **felony**, or bribery in this territory, or in any other state or territory in the Union, unless restored to civil rights ... is permitted to vote at any election, or to hold any position or office of honor, trust, or profit within this territory...." *Id.* at 346–47, 10 S.Ct. 299 (emphasis added) (quoting *Murphy v. Ramsey*, 114 U.S. 15, 5 S.Ct. 747, 29 L.Ed. 47 (1885), which upheld a Congressional statute excluding polygamists and bigamists from voting or holding office). Later, in *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), the U.S. Supreme Court rejected an equal protection challenge and upheld the constitutionality of a California statute which denied the right to vote to convicted felons, even those who had completed their sentences and paroles. *See also Owens v. Barnes*, 711 F.2d 25 (3d Cir.1983), *cert. denied*, 464 U.S. 963, 104 S.Ct. 400, 78 L.Ed.2d 341 (1983) (concluding that the voting scheme in Pennsylvania that permits unincarcerated felons to vote but denies that right to incarcerated felons does not violate equal protection); *Shepherd v. Trevino*, 575 F.2d 1110 (5ᵗʰ Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979) (upholding the Texas system of disenfranchisement of convicted felons and the provisions for re-enfranchisement as not violating equal protection rights); *Jones v. Edgar*, 3 F.Supp.2d 979 (C.D.Ill.1998) (stating that state constitutional provision denying incarcerated felons the right to vote did not violate Fifteenth Amendment); *Emery v. State of Montana*, 177 Mont. 73, 580 P.2d 445 (1978) (holding felon disenfranchisement not violative of Montana's State Constitution). The Court has also acknowledged that a state has a valid interest in ensuring that the rules of its society are made by those who have not shown an unwillingness to abide by those rules, and indicated that "[l]awful incarceration brings about the necessary withdrawal or

limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).

In Pennsylvania, Article I, Section 5 of our Constitution states that: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." The Registered Felons contend that legislative passage of portions of the Election Code and the Voters Registration Act exceed the authority of the legislature to restrict the franchise, and, as already indicated, they rely on *Winston v. Moore* for support of their contention. However, Petitioners' reliance on *Winston* is misplaced. Justice Elkin, writing for the Supreme Court stated:

> The power to regulate elections is legislative, and has always been exercised by the lawmaking branch of the government. Errors of judgment in the execution of the legislative power, or mistaken views as to the policy of the law, or the wisdom of the regulations, do not furnish grounds for declaring an election law invalid unless there is a plain violation of some constitutional requirement.... Legislation may be enacted which regulates the exercise of the elective franchise, and does not amount to a denial of the franchise itself.

*Winston v. Moore*, 244 Pa. at 454–55, 91 A. at 520. In addition, Justice Elkin concluded that the Act of July 24, 1913, P.L. 1001, known as the Nonpartisan Ballot Law, was constitutionally sound and indicated: "Judged by these tests, the act of 1913 cannot be attacked successfully on the ground that it offends against the 'free and equal' clause of the bill of rights. **It denies no qualified elector the right to vote**...." *Id.* at 457, 91 A. at 523 (emphasis added).

Of more recent vintage, former Chief Justice Nix addressed the meaning of the "free and equal" clause when he wrote:

"Elections are free and equal within the meaning of the Constitution when they are public and open to all **qualified electors** alike ... when every voter has the same right as any other voter, when each voter **under the law** has the right to cast his ballot and have it honestly counted; when the regulation of the **right to exercise the franchise** does not deny the franchise itself ... and when no constitutional right of the **qualified elector** is subverted or denied...." *In re 1991 Pennsylvania Legislative Reapportionment Commission*, 530 Pa. 335, 356, 609 A.2d 132, 142 (1992) (citations omitted) (emphasis added).

■ Article VII, Section 1 of the Pennsylvania Constitution sets forth the qualifications for electors and must be read *in pari materia* with Article I, Section 5. Under this provision, every citizen who meets the age and residency requirements is entitled to vote in all elections, subject, however, to "such laws requiring and regulating the registration of electors as the General Assembly may enact." The authority of the legislature to promulgate laws regulating elections was settled long ago in *Patterson v. Barlow*, 60 Pa. 54 (1869). A group of property owners and residents of this Commonwealth brought suit to have the legislatively enacted Registry Law, requiring the registration of voters, declared unconstitutional under the "free and equal" clause of the Pennsylvania Constitution. Justice Agnew delivered the opinion of the Court and stated:

It is admitted that the Constitution cannot execute itself, and that the power to regulate elections is a legislative one, which has always been exercised by the General Assembly since the foundation of the government. The Constitution appoints the time of the general election, prescribes the qualifications of voters, and enjoins the ballot; and for all the rest the law must provide.... This undoubted legislative power is left by the Constitution to a discretion unfettered by rule or proviso, save the single injunction "that elections shall be free and equal." But to whom are the elections free? They are free only to the *qualified* electors of the Commonwealth.... There must be a means of distinguishing the qualified from the unqualified ... and therefore the legislature must establish ... the means of ascertaining who are and who are not the qualified electors....

*Id.* at 75. The General Assembly has done this, and despite the Registered Felons' arguments to the contrary, we see no constitutional infirmity here. Under the laws enacted within this Commonwealth, we again hold, as we did in *Martin v. Haggerty* and our State Supreme Court did in *Ray v. Commonwealth*, that incarcerated felons are not qualified absentee electors.

The Registered Felons next argue that the language of Section 5102 of the Voter Registration Act, 25 P.S. § 961.5102(a), contains no exemption for confined felons,[13] and in fact supersedes the challenged portions of the Election Code. We point out that they ignore the remaining language of Section 5102(a) which clearly states that those permitted to make application for an absentee ballot must be a **qualified elector.** 25 P.S. § 961.5102(a)(1) and (2). Because we have determined that incarcerated felons are not qualified electors in Pennsylvania, there is no relief for the Registered Felons here. Therefore, the Court holds that no violation of constitutional rights occurs in the disenfranchisement of incarcerated felons, and this preliminary objection of Respondents is sustained on the basis of fail-

**13.** The Convicted Petitioners assert that the initial language of the statute, "Notwithstanding the provision of this Act or the Act of June 3, 1937 known as the Pennsylvania Election Code, the *following persons may make application for absentee ballot* by sending a letter or other signed document to the County Board of Elections in the county in which the person's voting address is located ...," overrides the specified sections that have the confined felon disqualification, and that these statutes are superseded. 25 P.S. § 961.5102(a) (emphasis added).

ure to state a claim upon which relief can be granted.

## II. Non–Registered Felons

The Non–Registered Felons, who are incarcerated but not registered, assert that they should be permitted to register and vote during their period of incarceration. In support of their claim, they advance the same arguments as those of the Registered Felons refuted above, namely that the General Assembly impermissibly enacted legislation affecting the qualifications of absentee electors and that the Pennsylvania Constitution does not bar incarcerated felons from voting. Because the substantive arguments underlying these assertions do not provide a basis for relief, as observed above, their claims must also fail.

## III. Released Felons

The Released Felons, who had not been registered prior to their incarceration and who have served at least their minimum sentences, contend that the Voter Registration Act impermissibly repealed sections of the Election Code by adding an additional qualified elector registration requirement that the registrant not have "been confined in a penal institution for a conviction of a felony within the last five years." 25 P.S. § 961.501(a). The Released Felons argue that Respondents "cannot claim a compelling state interest of sufficient magnitude to arbitrarily deny the fundamental right of suffrage guaranteed by Article I, §§ 1, 5, 25 and 26 of the Constitution of Pennsylvania." (Petition for Review, p. 22.)

However, while the right of felons to vote is not a fundamental right, and therefore, the Commonwealth is not required to show a "compelling state interest" to justify excluding felons from the franchise, *Owens v. Barnes*, 711 F.2d 25 (3d Cir.1983), *cert. denied*, 464 U.S. 963, 104 S.Ct. 400, 78 L.Ed.2d 341 (1983), we nevertheless conclude that there is no rational basis to preclude the registration of those who have been incarcerated within the last five years and who had not been registered previously, when those who were legally registered prior to incarceration *may* vote upon their release. Although a state may not only disenfranchise all convicted felons it may also distinguish among them, but the distinction must be such that it is rationally related to a legitimate state interest. *Owens.* The United States Supreme Court has indicated that while minors, felons and other classes of citizens may be excluded from voting, once the body of voters is determined, and their qualifications specified, there is "no constitutional way by which equality of voting power may be evaded." *Gray v. Sanders,* 372 U.S. 368, 380–81, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963).

The Third Circuit Court of Appeals in *Owens,* found relevant the Commonwealth's concession that it "could not disenfranchise similarly situated blue-eyed felons but not brown-eyed felons." *Owens,* 711 F.2d at 27. The Released Felons allege that this is the existing scenario in Pennsylvania today. We agree, and restricting registration under 25 P.S. § 961.501 as it presently exists, does not present a rational relationship to a legitimate state interest. We can conceive of no rationale for permitting those who were registered previous to incarceration to vote on their release, while those who were not previously registered, cannot. Such a statute has the appearance of penalizing ex-incarcerated felons for their status. Moreover, implicit in a presumption that an unregistered individual who commits a crime, and is punished therefor, remains civilly corrupt for five years following release, is the unwarranted assumption that there was no possibility of rehabilitation during that period of incarceration and for five years thereafter. There is nothing of which we are aware to support this logic and underpin the implication that, after five years have elapsed following a convicted felon's release from confinement, that individual has magically acquired the

wherewithal to be a responsible, qualified elector. We therefore conclude that the prohibition against registration for five years after release from confinement is constitutionally infirm, and overrule this preliminary objection.

### III. Petitioner Williams

■ Respondents have challenged Petitioner Williams' standing to maintain her claim contending that Williams is not a convicted felon and has not alleged that she is someone who will be unable to register and vote. Williams relies on *Bergdoll v. Kane* to support her position. In *Bergdoll*, the Pennsylvania Bar Association (PBA) and individual petitioners commenced a *quo warranto* action against the Secretary of the Commonwealth, challenging the placement of a proposed constitutional amendment on the ballot that would have amended the confrontation clause of Article I, Section 9 of the Pennsylvania Constitution and would have permitted the General Assembly to enact legislation regarding the manner in which children would testify in criminal proceedings. Williams cites a passage from that case in which Justice Saylor wrote:

> By defining the interest that appellees seek to protect as a criminal defendants' interest in the confrontation of a witness at trial, Secretary Kane minimizes what is truly at stake in this action. The interest sought to be protected is the fundamental right to vote.

*Bergdoll v. Kane*, 731 A.2d at 1268. Williams asserts that the Court found standing based on this passage and the fact that "some of the appellants were not criminal defendants." (Petitioners' Brief, p. 31.) Nothing could be farther from the truth, and this passage offers Williams no assistance.

■ The voting issue in *Bergdoll* revolved around whether the single proposed amendment to the Pennsylvania Constitution actually comprised two amendments—one to the confrontation clause and one to the constitutional provision relating to judicial administration—but did not permit the electorate to vote separately upon each of the amendments. The challenge to the amendment was brought by individual petitioners and the Secretary opposed PBA's standing on the ground that the association did not have a "substantial, direct and immediate interest in the outcome of the litigation because they were not criminal defendants whose right to confront witnesses would be limited by a change in the law." The *Bergdoll* court determined that PBA had standing as "attorneys, taxpayers, and electors in the Commonwealth." *Bergdoll*, 731 A.2d at 1268. More important, the Secretary challenged the standing of the individual petitioners on the same ground, that is, that they did not have a "substantial, direct and immediate interest in the outcome of the litigation because they were not criminal defendants whose right to confront witnesses would be limited by a change in the law." *Id.* The court concluded that the Secretary had waived the issue of standing by failing to raise the issue in her pleadings, although the court went on to determine that the individual petitioners had standing as individual electors. We remind Williams that standing, in Pennsylvania, is a waivable issue. *Erie Indemnity Company v. Coal Operators Casualty Company*, 441 Pa. 261, 272 A.2d 465 (1971).

■ It has been long settled that an interest to be justiciable must be more than a general interest and must be direct, substantial and present, as contrasted with remote or speculative. *Smith v. McCarthy*, 56 Pa. 359 (1867). Moreover, it is hornbook law that a person whose interest is common to that of the public generally, in contradistinction to an interest that is peculiar to herself, lacks standing to attack the validity of a legislative enactment. *See, Department of Commerce v. United States House of Representatives*, 525 U.S. 316, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999); *Doremus v. Board of Education*, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952); *Ex parte Levitt*, 302 U.S. 633, 58 S.Ct. 1, 82

L.Ed. 493 (1937); *Buchanan v. Warley,* 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917).

■ We have examined with great care Petitioner Williams' claim to standing and to a justiciable interest to maintain this action. Petitioner Williams' claims that the challenged statutes result in the dilution of her vote in a district that is primarily black and Hispanic. Vote dilution claims are conceptually distinct from vote denial claims because dilution claims focus on the overall harm done to a minority group's voting strength. We find that most vote dilution claims have been brought within the realm of redistricting, that is, changing political boundaries to affect minority voting power. Within that context, vote dilution takes place where qualified electors are shifted within those boundaries so that the qualified electors are grouped differently than before, or with an eye to obtaining a particular outcome. The result is to neutralize the vote of one qualified elector with the votes of other qualified electors. Such is not the case here.

■ The linchpin of Petitioner Williams' standing claim is that she votes in a district in which the majority of electors are black and/or Hispanic, contending that her neighbors in that district vote as a block. However, the concept of diminished voting strength recognized as actionable under federal jurisprudence as "vote dilution," is defined as "a regime that denies to minority voters the same opportunity to participate in the political process and to elect representatives of their choice that majority voters enjoy." *Reno v. Bossier Parish School Board,* 528 U.S. 320, ——, 120 S.Ct. 866, 887, 145 L.Ed.2d 845 (2000). Petitioner Williams has not demonstrated, nor do we believe she can, that she does not have an equal opportunity to participate in the political process in her district. Moreover, Petitioner Williams is essentially asserting that her vote is diluted by the **absence** of **unqualified electors.**

We find no merit in this argument whatsoever.

Finally, Petitioner Williams contends that she desires to protect the fundamental right to vote. This interest is not peculiar to her, is not direct, and is too remote and too speculative to afford her a standing to attack the statutory provisions she challenges.

Based on the foregoing, we sustain Respondents' preliminary objection as to the Registered Felons' and Non–Registered Felons' claim that incarcerated felons are unconstitutionally deprived of "qualified absentee elector" status; we overrule Respondents' preliminary objection as to the Released Felons' claim that Section 501 impermissibly deprives those ex-felons who had not previously registered and who have been incarcerated within the past five years, of the right to register to vote; and we sustain Respondents' preliminary objection as to the standing of Petitioner Williams, and she is dismissed from the case.

### *ORDER*

**NOW,** September 18, 2000, we SUSTAIN Respondents' preliminary objection as to Petitioners' claim that incarcerated felons are unconstitutionally deprived of "qualified absentee elector" status; we OVERRULE Respondents' preliminary objection as to Petitioners' claim that Section 501 impermissibly deprives those ex-felons who have been incarcerated within the past five years of the right to register to vote; and we SUSTAIN Respondents' preliminary objection as to the standing of Petitioner Williams, and she is dismissed from the case.

Respondents shall file an answer to the remaining count of the petition for review within thirty days of the entry of this order.

McGINLEY, Judge, concurring and dissenting.

I concur in part to the majority's conclusion: that "incarcerated felons are not

qualified absentee electors"; that non-registered felons are not permitted to register to vote while incarcerated; and that Petitioner Williams does not have standing "to attack the statutory provisions that she challenges." However, I respectfully dissent in part to the majority's conclusion that "the prohibition against registration [of ex-incarcerated felons] for five years after release from confinement is constitutionally infirm. . . ." [1]

In *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) the United States Supreme Court rejected an equal protection challenge to a California statute which denied the right to vote to convicted felons who completed their sentences and paroles as unconstitutional. Also, In *Martin v. Haggerty*, 120 Pa. Cmwlth. 134, 548 A.2d 371, 374 (1988) this Court observed that "the Court in Owens [v. Barnes, 711 F.2d 25 (3 rd Cir.1983), cert. denied, 464 U.S. 963, 104 S.Ct. 400, 78 L.Ed.2d 341 (1983) ], noted that a state does not violate the Fourteenth Amendment if it chooses to disenfranchise all convicted felons."

I believe the five-year prohibition contained in Section 501 of the Voter Registration Act does not unconstitutionally penalize a released felon based upon his unregistered status. Placing a five-year prohibition presents a rational relationship to a legitimate state interest. This legislative prohibition requires the felon to adhere to the rules of society for five years before he or she can register to vote. Because our federal and state courts have previously determined that the legislature has the statutory authority to totally deny a convicted felon the free exercise of the right to suffrage, Section 501 of the Voter Registration Act does not violate Article VII, Section 1 of the Pennsylvania Constitution and as such is constitutionally sound. Accordingly, I would sustain Respondent's preliminary objections.

Judge FLAHERTY joins in this concurring and dissenting opinion.

LEADBETTER, Judge, concurring and dissenting.

I join the opinion of the majority in section IV (standing of petitioner Williams). As to sections I and II regarding absentee ballots, I concur in the result. As to section III (five-year registration ban for released prisoners), I must respectfully dissent.

Article VII, Section 14 of the Pennsylvania Constitution specifically deals with absentee voting. It provides, *inter alia:*

(a) The Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may, on the occurrence of any election, be absent from the municipality of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, are unable to attend at their proper polling places because of illness or physical disability or who will not attend a polling place because of the observance of a religious holiday or who cannot vote because of election day duties, in the case of a county employee, may vote, and for the return and canvass of their votes in the election district in which they respectively reside.

1. Section 501 of the Pennsylvania Voter Registration Act (Voter Registration Act), Act of June 30, 1995, 25 P.S. § 961.501 provides:
 (a) **Eligibility.**—A qualified elector who will be at least 18 years of age on the day of the next election, who has been a citizen of the United States, who has been a citizen of the United States for at least one month prior to the next election and who has re-

sided in this Commonwealth and the election district where the qualified elector offers to vote at least 30 days prior to the next ensuing election and **has not been confined in a penal institution for a conviction of a felony within the last five years shall be entitled to be registered as provided in this chapter.** (emphasis added).

Since incarcerated persons do not fall within the categories of those guaranteed the right to vote by absentee ballot, it must follow that the legislature is under no constitutional obligation to allow them to do so. Because the constitution itself specifically deals with the absentee ballot issue, I would not address the more general (and more difficult)[1] question whether the General Assembly may restrict the definition of "qualified elector" beyond the terms set forth in Article VII, Section 1.

With respect to the five-year registration ban, I cannot join the majority in holding that the law unfairly discriminates between registered and unregistered ex-felons, not because I find the analysis to be lacking in merit, but because the issue was not raised by petitioners. Instead, petitioners claim that the registration ban causes them to be disenfranchised in violation of Article VII, Section 1 and deprives them of a fundamental right. As to these arguments, I agree with Judge McGinley's dissent that binding precedent requires us to sustain the preliminary objections. (Indeed, the majority relies upon the same authorities in sustaining the preliminary objections as to the absentee ballot question.) Petitioners further argue that the five-year ban violates the anti-discrimination provisions of Article I, Section 26 because it has a disparate impact on black voters. However, as the Supreme Court has noted:

> Presented with a neutral state law that produces disproportionate effects along racial lines [the following approach should be applied] to determine whether the law violates the Equal Protection Clause of the Fourteenth Amendment:
> "[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact, ... Proof of racially discriminatory

intent or purpose is required to show a violation of the Equal Protection Clause."

*Hunter v. Underwood,* 471 U.S. 222, 227, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985), quoting *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 264–65, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).[2] In this case petitioners have not alleged any racially discriminatory intent or purpose on the part of the General Assembly, nor have they averred any facts which are in any way suggestive of such an intent. Accordingly, I agree with Judge McGinley that all preliminary objections should be sustained.

---

1. The majority opinion correctly cites controlling authority from the Pennsylvania Supreme Court for the proposition that the legislature may do so. I believe petitioners make a credible argument for the reconsideration of this holding, but that is not our prerogative.

2. The equal protection provisions of Article I, Section 26 are analyzed under the same standards as those arising under the fourteenth amendment to the United States Constitution. *Love v. Borough of Stroudsburg,* 528 Pa. 320, 325, 597 A.2d 1137, 1139 (1991).