Justice Donohue joins this dissenting opinion.

LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, Carmen Febo San Miguel, James Solomon, John Greiner, John Capowski, Gretchen Brandt, Thomas Rentschler, Mary Elizabeth Lawn, Lisa Isaacs, Don Lancaster, Jordi Comas, Robert Smith, William Marx, Richard Mantell, Priscilla McNulty, Thomas Ulrich, Robert McKinstry, Mark Lichty, Lorraine Petrosky, Petitioners

v.

The COMMONWEALTH of Pennsylvania; The Pennsylvania General Assembly; Thomas W. Wolf, in his capacity as Governor of Pennsylvania; Michael J. Stack III, in his capacity as Lieutenant Governor of Pennsylvania and President of the Pennsylvania Senate; Michael C. Turzai, in his capacity as Speaker of the Pennsylvania House of Representatives; Joseph B. Scarnati III, in his capacity as Pennsylvania Senate President Pro Tempore; Robert Torres, in his capacity as Acting Secretary of the Commonwealth of Pennsylvania; Jonathan M. Marks, in his capacity as Commissioner of the Bureau of Commissions, Elections, and Legislation of the Pennsylvania Department of State, Respondents

No. 159 MM 2017

Supreme Court of Pennsylvania.

Decided: January 22, 2018

Andrew David Bergman, Esq., Michael Churchill, Esq., Benjamin David Geffen, Esq., Public Interest Law Center, John Arak Freedman, Esq., David Paul Gersch, Esq., Daniel Frederick Jacobson, Esq., R. Stanton Jones, Esq., Mary M. McKenzie, Esq., John Robinson, Esq., Elisabeth S. Theodore, Esq., for Petitioners.

Mark Alan Aronchick, Esq., Claudia De Palma, Esq., Michele D. Hangley, Esq., Hangley Aronchick Segal Pudlin & Schiller, Thomas Paul Howell, Esq., Governors Office of General Counsel, Timothy Eugene Gates, Esq., Ian Blythe Everhart, Esq., Kathleen Marie Kotula, Esq., Pennsylvania Department of State, Pennsylvania Office of General Counsel, for Governor Wolf, Robert Torres, Jonathan Marks, Respondents.

Clifford B. Levine, Esq., Alex Michael Lacey, Esq., Alice Birmingham Mitinger, Esq., Cohen & Grigsby, P.C., Lazar Melton Palnick, Esq., for Lt. Governor Stack, III, Respondent.

Jonathan F. Bloom, Esq., Karl Stewart Myers, Esq., Stradley, Ronon, Stevens & Young, L.L.P., for Pennsylvania General Assembly, Respondent.

Kathleen A. Gallagher, Esq., Carolyn Batz McGee, Esq., Russell David Giancola, Esq., Jason Raymond McLean, Esq., Cipriani & Werner, P.C., John E. Hall, Esq., Patrick T. Lewis, Esq., Robert J. Tucker, Esq., Effrem Mark Braden, Esq., for Speaker of the House Michael C. Turzai, Respondent.

Jason Torchinsky, Esq., Shawn Sheehy, Esq., John Patrick Wixted, Esq., Brian S. Paszamant, Esq., Jason Adam Snyderman, Esq., Blank Rome LLP, Matthew Hermann Haverstick, Esq., Mark Edward Seiberling, Esq., Joshua John Voss, Esq., Kleinbard LLC, for President Pro Tempore Joseph B. Scarnati, III, Respondent.

Lawrence J. Tabas, Esq., Obermayer Rebmann Maxwell & Hippel LLP, Timothy James Ford, Esq., Rebecca Lee Warren, Esq., for Brian McCann, et al, Intervenors.

Irwin William Aronson, Esq., John R. Bielski, Esq., Lauren Miller Hoye, Esq., Amy Louise Rosenberger, Esq., Ralph J. Teti, Esq., Alaine S. Williams, Esq., Willig, Williams & Davidson, for AFSCME Council 13, et al., Amicus Curiae.

Robert A. Atkins, Esq., Andrew J. Ehrlich, Esq., Nicholas Groombridge, Esq., Michael Pernick, Esq., Pietro Signoracci, Esq., Jordan Berson Yeager, Esq., Curtin & Heefner LLP, for Political Science Professors, Amicus Curiae.

Richard L. Bazelon, Esq., Bazelon Less & Feldman, P.C., for The Brennan Center for Justice at New York University School of Law, Amicus Curiae.

Martin Jay Black, Esq., Dechert LLP, for Common Cause, Amicus Curiae.

Thomas M. Bondy, Esq., Hannah Garden–Monheit, Esq., Alison Melissa Kilmartin, Esq., E. Joshua Rosenkranz, Esq., for Grofman, Bernard, Amicus Curiae and Gaddie, Ronald Keith, Amicus Curiae.

Edward Diver, Esq., Peter E. Leckman, Esq., Langer Grogan & Diver, P.C., for Campaign Legal Center, Amicus Curiae.

James Christopher Martin, Esq., Traci Sands Rea, Esq., Colin Emmet Wrabley, Esq., Reed Smith LLP, for The Pittsburgh Foundation, Amicus Curiae.

Witold J. Walczak, Esq., for American Civil Liberties Union of Pennsylvania, Amicus Curiae and American Civil Liberties Union, National, Amicus Curiae.

## ORDER

PER CURIAM

**AND NOW,** this 22nd day of January, 2018, upon consideration of the Petition for Review, the Commonwealth Court's proposed findings of fact and conclusions of law, the briefs of the parties, intervenors, and *amici curiae,* and the oral argument presented on January 17, 2018, the Court orders as follows:

First, the Court finds as a matter of law that the Congressional Redistricting Act of 2011 clearly, plainly and palpably violates the Constitution of the Commonwealth of Pennsylvania, and, on that sole basis, we hereby strike it as unconstitutional. Accordingly, its further use in elections for Pennsylvania seats in the United States House of Representatives, commencing with the upcoming May 15, 2018 primary, is hereby enjoined.

Second, should the Pennsylvania General Assembly choose to submit a congressional districting plan that satisfies the requirements of the Pennsylvania Constitution, it shall submit such plan for consideration by the Governor on or before **February 9, 2018**. If the Governor accepts the General Assembly's congressional districting plan, it shall be submitted to this Court on or before **February 15, 2018**.

Third, should the General Assembly not submit a congressional districting plan on or before **February 9, 2018**, or should the Governor not approve the General Assembly's plan on or before **February 15, 2018**, this Court shall proceed expeditiously to adopt a plan based on the evidentiary record developed in the Commonwealth Court. In anticipation of that eventuality, the parties shall have the opportunity to be heard; to wit, all parties and intervenors may submit to the Court proposed remedial districting plans on or before **February 15, 2018**.

Fourth, to comply with this Order, any congressional districting plan shall consist of: congressional districts composed of compact and contiguous territory; as nearly equal in population as practicable; and which do not divide any county, city, incorporated town, borough, township, or ward, except where necessary to ensure equality of population.

Fifth, the Executive Branch Respondents are advised to anticipate that a congressional districting plan will be available by **February 19, 2018**, and are directed to take all measures, including adjusting the election calendar if necessary, to ensure that the May 15, 2018 primary election takes place as scheduled under that remedial districting plan.

Sixth, as acknowledged by the parties, the March 13, 2018 special election for Pennsylvania's 18th Congressional District, which will fill a vacancy in an existing congressional seat for which the term of office ends in 11 months, shall proceed under the Congressional Redistricting Act of 2011 and is unaffected by this Order.

Opinion to follow.

Jurisdiction is retained.

Justice Baer files a Concurring and Dissenting Statement.

Chief Justice Saylor files a Dissenting Statement in which Justice Mundy joins.

Justice Mundy files a Dissenting Statement.

JUSTICE BAER, Concurring and Dissent

I join the *per curiam* order (PCO) to the extent it concludes that the districts as set forth by the Congressional Redistricting Act of 2011 are unconstitutional. I also concur in the PCO's invitation to the Legislature and Governor to craft constitutional maps, recognizing that redistricting is a legislative function. *Butcher v. Bloom*, 415 Pa. 438, 203 A.2d 556, 569 (1964) ("The task of reapportionment is not only the responsibility of the Legislature, it is also a function which can be best accomplished by that elected branch of government.").

I find myself in an awkward position regarding the PCO's directive that the primary election shall proceed with new maps on May 15, 2018. I understand the Court's desire to follow this schedule as it is arguably counterintuitive to believe that the current map is unconstitutional and, nevertheless, direct its usage in the May 2018 election. There are, however, other forces at play.

When faced with an unconstitutional map, courts should determine "whether the imminence of [the primary and] general elections requires the utilization of [a prior plan] notwithstanding [its] invalidity" or whether a constitutional map "can practicably be effectuated" in time for the pending election. *Id.* at 568 (*quoting Lucas v. Forty–Fourth General Assembly of State of Colorado*, 377 U.S. 713, 739, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964)) (internal quotation marks omitted). In *Butcher*, we allowed the election to proceed employing maps that we had concluded were unconstitutional to avoid "[s]erious disruption of orderly state election processes and basic governmental functions." *Id.* at 568–69.

As in *Butcher*, I believe the dangers of implementing a new map for the May 2018 primary election risks "[s]erious disruption of orderly state election processes and ba-

sic governmental functions." *Id.* It is naïve to think that disruption will not occur. Prospective candidates, incumbents and challengers alike, have been running for months, organizing, fundraising, seeking their party's endorsements, determining who should be on canvassing and telephone lists, as well as undertaking the innumerable other tasks implicit in any campaign—all with a precise understanding of the districts within which they are to run, which have been in place since 2011. The change of the districts' boundary lines at this time could result in candidates, again incumbents and challengers alike, no longer living in the districts where they have been carrying out these activities for a year or more. This says nothing of the average voter, who thought he knew his Congressperson and district, and now finds that all has changed within days of the circulation of nomination petitions.

In this regard, the 18th Congressional District in southwestern Pennsylvania is worthy of specific mention. A special election will be held there on March 13, 2018. If a new map is indeed implemented for the 2018 election, voters in this district would be electing a representative in March in one district while nomination petitions would be circulating for a newly-drawn district, which may or may not include the current candidates for the special election. Again and respectfully, I find the likelihood for confusion, if not chaos, militates strongly against my colleagues' admittedly admirable effort to correct the current map prior to the May 15, 2018 primary election.

Moreover, while the Court has set forth a timeline for resolution of this issue which theoretically allows for implementation of a new, constitutional map for the May primary election, this timeline will face immense and perhaps insurmountable pressure through likely subsequent litiga-

tion. Regardless of the merit of any claims, litigation takes time, and under the proposed schedule, there is no time.

Finally, I do not favor the alternative of moving this year's primary election. It has been the tradition in Pennsylvania to hold a spring primary and a fall general election. This year, Pennsylvanians will elect a Governor, a Lieutenant Governor, a United States Senator, all of Pennsylvania's Congressional Representatives, one-half of the Pennsylvania Senate, and all of the Pennsylvania House of Representatives. We cannot determine the impact of moving a primary election from the timeframe it has long been held to a mid-summer substitute. I am uncomfortable risking aberrant results through such a departure.

Accordingly, I believe it more prudent to apply our holding in this case to the 2020 election cycle, which would allow ample time for our sister branches of government to comply with our holding with guidance from our forthcoming opinion, as well as providing candidates and their supporters the opportunity to campaign in their newly established districts, and, most importantly, to reduce the risk of voter confusion.

Having said all of this, I readily acknowledge the Court's commendable attempt to compress the process of correcting the map to conduct timely primary elections. I will cooperate with the Court as it pursues its admirable goal, so long as all involved receive due process. I cannot, however, join the PCO without this expression because of my concern that a well-intentioned effort can still produce an unsatisfactory process and conclusion.

CHIEF JUSTICE SAYLOR, Dissent

Consistent with my previous vote disfavoring the assumption of extraordinary jurisdiction, I agree with the Commonwealth Court's original position that it would have been appropriate to stay this matter pending anticipated guidance from the Supreme Court of the United States in *Gill v. Whitford*, No. 16–1161 (U.S.). *See* Order dated Oct. 16, 2017, in *League of Women Voters of Pa. v. Commonwealth*, No. 261 M.D. 2017 (Pa. Cmwlth.). Indeed, the Supreme Court has stayed a series of recent federal court directives to state legislatures in cases lodging partisan gerrymandering challenges pending its review, most recently, as of last week. *See* Order dated Jan. 18, 2018, in *Rucho v. Common Cause*, No. 17A745 (U.S.). I hold the view that restraint is appropriate, particularly in light of the timing of the present challenge to a congressional redistricting plan that was enacted in 2011 and the proximity of the impending 2018 election cycle. *Cf.* Concurring and Dissenting Statement, *op.* at 285–86 (Baer, J.).

The crafting of congressional district boundaries is quintessentially a political endeavor assigned to state legislatures by the United States Constitution. *See* U.S. CONST. art. I, § 4. Notably, certain political objectives—such as the aim to avoid pitting incumbents against each other or to maintain the cores of prior districts—have been recognized as traditional redistricting criteria. *See Karcher v. Daggett*, 462 U.S. 725, 740, 103 S.Ct. 2653, 2663, 77 L.Ed.2d 133 (1983). Federal and state courts also appreciate the propriety of preserving communities of interest which may not overlap with political subdivision lines. *See, e.g., Evenwel v. Abbott*, —— U.S. ——, 136 S.Ct. 1120, 1124, 194 L.Ed.2d 291 (2016); *Holt v. 2011 Legislative Reapportionment Comm'n*, 620 Pa. 373, 422–23, 67 A.3d 1211, 1241 (2013). Furthermore, in terms of such communities, it seems plain that legislators are in a superior position to address their interests. *Accord Vieth v. Jubelirer*, 541 U.S. 267, 358, 124 S.Ct. 1769, 1824, 158 L.Ed.2d 546 (2004) (Breyer, J., dissenting) ("It is precisely *because*

politicians are best able to predict the effects of boundary changes that the districts they design usually make some political sense." (emphasis in original)).

To the extent that a judicially manageable standard can be articulated in this arena, I believe the proper litmus should abide such considerations. I also consider it appropriate to take into account matters of degree relative to the inevitable political and partisan dynamics associated with redistricting by a legislative body.

I realize that the recommended factual findings of Judge Brobson of the Commonwealth Court raise substantial concerns as to the constitutional viability of Pennsylvania's current congressional districts when considered under standards that have recently been applied by some federal courts in decisions, which, again, are under review by the United States Supreme Court. My position at this juncture is only that I would not presently upset those districts, in such an extraordinarily compressed fashion, and without clarifying—for the benefit of the General Assembly and the public—the constitutional standards by which districting is now being adjudged in Pennsylvania.

Justice Mundy joins this dissenting statement.

JUSTICE MUNDY, Dissenting

I join Chief Justice Saylor's dissenting statement in full. I write separately to express my concern with the vagueness of the Court's order. Despite its pronouncement that the 2011 map clearly, plainly, and palpably violates the Pennsylvania Constitution, the Court fails to identify the specific provision it so violates. This vagueness by the Court is problematic because the parties raise several state constitutional claims, including the Speech Clause, the Free Association Clause, the Elections Clause, and the Equal Protection Clause,

each of which has a different mode of analysis. *See generally* PA. CONST. art. I, §§ 1, 5, 7, 20, 26; *Pap's A.M. v. City of Erie*, 571 Pa. 375, 812 A.2d 591, 612 (2002) (Speech Clause); *Love v. Borough of Stroudsburg*, 528 Pa. 320, 597 A.2d 1137, 1139 (1991) (Equal Protection Clause); *Mixon v. Commonwealth*, 759 A.2d 442, 449–50 (Pa. Cmwlth. 2000), *aff'd*, 566 Pa. 616, 783 A.2d 763 (2002) (Elections Clause). The Court's order fails to give essential guidance to the General Assembly and the Governor, or this Court on how to create a constitutional, non-gerrymandered map.

I am also troubled by the order striking down the 2011 Congressional map on the eve of our midterm elections, as well as the remedy proposed by the Court. In my view, the implication that this Court may undertake the task of drawing a congressional map on its own raises a serious federal constitutional concern. *See* U.S. CONST. art. I, § 4, cl. 1 (stating, "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State *by the Legislature thereof*[ ]") (emphasis added); *Ariz. State Legislature v. Ariz. Indep. Redist. Comm'n*, —— U.S. ——, 135 S.Ct. 2652, 2667–68, 192 L.Ed.2d 704 (2015) (concluding the Federal Elections Clause permits redistricting by the state legislature, Congress, or an independent redistricting commission). For these reasons, I conclude the Court's approach is imprudent and I cannot participate in it. I respectfully dissent.