PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3811
_____

AMERICAN CIVIL RIGHTS UNION,
in its individual and corporate capacities,

Appellant

v.

PHILADELPHIA CITY COMMISSIONERS
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-16-cv-01507)
District Judge: The Honorable C. Darnell Jones, II
_____

Argued April 27, 2017
_____

(Opinion Filed:  September 25, 2017)

Before: McKEE, VANASKIE, and RENDELL, *Circuit
Judges*

John C. Eastman      **[ARGUED]**
Center for Constitutional Jurisprudence
One University Drive
Orange, CA 92866

Linda A. Kerns
1420 Locust Street
Suite 200
Philadelphia, PA 19102

Joseph A. Vanderhulst, Esq.
Public Interest Legal Foundation
32 East Washington Street
Suite 1675
Indianapolis, IN 46204

*Attorneys for Plaintiff-Appellant*

Kelly S. Diffily      **[ARGUED]**
Sozi Pedro Tulante
City of Philadelphia
Law Department
17th Floor
1515 Arch Street
One Parkway
Philadelphia, PA 19102

Benjamin H. Field
City of Philadelphia
Law Department
1515 Arch Street
One Parkway
Philadelphia, PA 19102

*Attorneys for Defendants–Appellees*

Ira M. Feinberg
Daryl L. Kleiman
Hogan Lovells US
875 Third Avenue
New York, NY 10022

Sarah C. Marberg
Hogan Lovells
555 Thirteenth Street, N.W.
Columbia Square
Washington, DC 20004

*Attorneys for Amicus Appellees Project Vote and Demos*

---

OPINION OF THE COURT

---

McKEE, *Circuit Judge.*

The American Civil Rights Union ("ACRU") challenges the Philadelphia City Commissioners' failure to purge the city's voter rolls of registered voters who are currently incarcerated due to a felony conviction. Because state law prohibits felons from voting while they are in prison, the ACRU argues that the National Voter Registration Act requires the Commissioners to remove them from the voter rolls. For the reasons that follow, we will affirm the District Court's dismissal of this suit.

## I. Background

### A. Factual and Procedural Background

The ACRU is a nonprofit organization that states that it "litigates to enforce clean voter registration rolls" and "promotes election integrity."[1] In January of 2016, the ACRU sent a letter to the Philadelphia City Commissioners, which is responsible for overseeing elections in Philadelphia.[2] The letter stated, in part, that "your county is failing to comply with Section 8 of the National Voter Registration Act (NVRA)" by not making "a reasonable effort to maintain voter registration lists free of dead voters, ineligible voters and voters who have moved away."[3] The letter also asked the Commissioners to provide, *inter alia*, documentation of their efforts to maintain accurate voter lists and "the number of

---

[1] American Civil Rights Union, Mission Statement, http://www.theacru.org/mission-statement/ (last visited Aug. 21, 2017).

[2] *United States v. Shoup*, 608 F.2d 950, 954 (3d Cir. 1979).

[3] App. 36.

ineligible voters removed for criminal conviction."[4] The letter stated that its purpose was to serve as notice that the Commissioners could be sued under the NVRA.

The following April, the ACRU did sue the City Commissioners for injunctive relief pursuant to the NVRA. The suit alleged that the Commissioners failed to provide list maintenance documentation as required by 52 U.S.C. § 20507(i) and asked to inspect the Commissioners' records.[5] The Commissioners moved to dismiss. In June, the Commissioners met with the President of the ACRU and explained that they do not remove persons incarcerated due to felony conviction from the rolls or otherwise make note of registrants that are currently incarcerated due to felony conviction. They also told the ACRU that the City did not attempt to coordinate any efforts with law enforcement to identify such registrants.

Thereafter, the ACRU moved for a preliminary injunction and leave to amend its complaint. In its motion, the ACRU claimed "[t]he NVRA requires [the City Commissioners] to make a 'reasonable effort to remove the names of ineligible registrants from the official lists of eligible voters,' including voters ineligible by virtue of felony conviction."[6] The District Court concluded that the ACRU had "grossly misrepresented the plain language of the statute."[7] Instead of granting the requested relief, the Court *sua sponte* issued a Rule to Show Cause as to why the motion should not be stricken and why the Court should not issue sanctions.[8] The ACRU responded that though its characterization of the NVRA was incomplete, the NVRA must be read together with the requirements of the Help America Vote Act ("HAVA"), and that when taken together, the ACRU's position was consistent with the statutory

---

[4] App. 28.

[5] *Am. Civil Rights Union v. Phila. City Comm'rs*, No. CV 16-1507, 2016 WL 4721118, at *1 (E.D. Pa. Sept. 9, 2016).

[6] Pl's Mot. Prelim. Inj., ECF No. 14, at 6 (quoting 52 U.S.C. § 20507(a)(4)).

[7] *Am. Civil Rights Union*, 2016 WL 4721118, at *3.

[8] *Id.*

scheme.[9] Although the Court did not sanction the ACRU for misrepresenting the NVRA, it did deny the motion for a preliminary injunction.

After additional motions were filed, the District Court granted the Commissioners' motion to dismiss the Amended Complaint. In a very detailed and thorough analysis, the Court held that neither the NVRA nor HAVA requires the Commissioners to remove felons from the voter rolls while they are incarcerated.[10] This timely appeal followed.

### *B. Statutory Background*

#### i. National Voter Registration Act

The National Voter Registration Act has four main goals: (1) increasing the number of registered voters, (2) increasing participation in federal elections, (3) maintaining current and accurate voter rolls, and (4) ensuring the integrity of the voting process.[11] These goals can sometimes be in tension with one another: On the one hand, maintaining clean voter rolls may help ensure election integrity, but on the other hand, purging voters from the rolls requires voters to re-register and hinders participation in elections. However, it is clear from the legislative history that Congress was wary of the devastating impact purging efforts previously had on the electorate. Congress noted that not only are purging efforts often "highly inefficient and costly" to the state by requiring reprocessing of registrations but also that "there is a long history of such cleaning mechanisms [being] used to violate the basic rights of citizens."[12] The drafters attempted to balance these concerns with the need for clean voter rolls: "An important goal of this bill, to open the registration process, must be balanced with the need to maintain the

---

[9] Pl's Resp. Order Show Cause, ECF No. 19.

[10] *Am. Civil Rights* Union, 2016 WL 4721118, at *9.

[11] 52 U.S.C. § 20501.

[12] S. Rep. No. 103-6, at 18 (1993). *See also* H.R. Rep. No. 103-9, at 2 (1993) (noting that "[r]estrictive registration laws and administrative procedures" such as "selective purges . . . discourage participation.")

5

integrity of the election process by updating the voting rolls on a continual basis."[13]

Accordingly, the NVRA both protects registered voters from improper removal from the rolls and places limited requirements on states to remove ineligible voters from the rolls. The section that squarely addresses these requirements, Section 8, is the crux of this dispute.[14] That section provides as follows:

> In the administration of voter registration for elections for Federal office, each State shall . . .
>
> (3) provide that the name of a registrant may not be removed from the official list of eligible voters except—
>> (A) at the request of the registrant;
>> (B) as provided by State law, by reason of criminal conviction or mental incapacity; or
>> (C) as provided under paragraph (4);
>
> (4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of—
>> (A) the death of the registrant; or
>> (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d) [notice provisions set forth in Section 8] . . . .[15]

In short, once a person is properly registered to vote, a state is only permitted to remove him or her from the voting list for narrowly specified reasons. Specifically, Congress

---

[13] S. Rep. No. 103-6, at 18 (1993).

[14] In the context of the NVRA, references to "Section 8 violations" refer to violations of 52 U.S.C. § 20507. This terminology is derived from the section of the public law originally enacting the statute, Pub. L. No. 103-31, § 8, May 20, 1993, 107 Stat. 77 (1993).

[15] 52 U.S.C. §§ 20507(a)(3), (a)(4).

6

allows removal if: the person dies, changes residence, asks to be taken off the list, or becomes ineligible under state law because of criminal conviction or mental incapacity. The NVRA also provides a private right of action so that private parties "aggrieved by a violation of this chapter" may sue to enforce the statute.[16]

## ii. Pennsylvania's Restriction of the Franchise

The extent to which convicted felons are denied the right to vote varies greatly from state to state, depending on the law of a given state. In states like Maine and Vermont, for example, individuals convicted of crimes retain the right to vote at all times.[17] Individuals convicted of felonies may even register and vote from prison.[18] At the other end of the spectrum, states like Florida and Kentucky deprive individuals convicted of felonies of the right to vote for the rest of their lives with few exceptions.[19]

In Pennsylvania, individuals convicted of felonies are only barred from voting during the period that they are incarcerated. Pennsylvania law specifically excludes anyone who is incarcerated from the definition of "qualified absentee

---

[16] *Id.* § 20510. Before filing, the aggrieved person must "provide written notice of the violation to the chief election official of the State involved." "If the violation is not corrected within 90 days after receipt of notice" or "within 20 days after the receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court." *Id.*

[17] Me. Rev. Stat. tit. 21-A, § 112 14; Vt. Stat. Ann. tit. 17 § 2121.

[18] Elections Division, Me. Dep't of State, *Maine Voting Residence Fact Sheet*, 2 (2012), http://www.maine.gov/sos/cec/elec/voter-info/residencyfacts0812.doc; Vt. Sec'y of State, *Voter Registration Frequently Asked Questions*, Elections (Dec. 22, 2013) https://www.sec.state.vt.us/elections/frequently-asked-questions/voter-registration.aspx.

[19] Fla. Const. art. VI, § 4(a); Ky. Const. § 145(1).

electors":

> [T]he words 'qualified absentee elector' *shall in nowise be construed to include persons confined in a penal institution* or a mental institution nor shall it in anywise be construed to include a person not otherwise qualified as a qualified elector in accordance with the definition set forth in section 102(t) of this act.[20]

Nevertheless, individuals registered to vote before being incarcerated are permitted to vote immediately upon release.[21] And those not previously registered to vote may register in prison if they will be released by the date of the election.[22] Thus, Pennsylvania law "do[es] not completely disenfranchise the convicted felon, as is the case in fourteen of [its] sister states; it merely suspends the franchise for a defined period."[23]

---

[20] 25 Pa. Stat. Ann. § 2602(w) (emphasis added). The statute's reference to "persons confined to a penal institution" has been interpreted by the Pennsylvania Attorney General to be limited to individuals convicted of felonies. *Voting by Untried Prisoners and Misdemeanants*, 67 Pa. D. & C.2d 449, 453 (1974).

[21] *Mixon v. Commonwealth*, 759 A.2d 442, 451 (Pa. Commw. Ct. 2000), *aff'd*, 783 A.2d 763 (Pa. 2001). Indeed, as was the case for one of the plaintiffs in *Mixon*, incarcerated felons that are furloughed during an election may also vote if previously registered. *Id.* at 444–45.

[22] *See id.* at 421 (striking down law requiring previously-incarcerated felons to wait five years after their conviction to register to vote). *See also* Pa. Dep't of State, *Voting Rights of Convicted Felons, Convicted Misdemeanants and Pretrial Detainees*, 2 (2017) [Hereinafter *Voting Rights*], http://www.votespa.com/en-us/Documents/Convicted_felon_brochure.pdf (identifying "who can register and vote" as including "[i]ndividuals who have been released (or will be released by the date of the next election) from a correctional facility").

[23] *Mixon*, 759 A.2d at 448 n.11. *See also Owens v. Barnes*, 711 F.2d 25, 26 (3d Cir. 1983) ("[W]hile Pennsylvania could choose to disenfranchise all convicted felons, it has not done so; unincarcerated convicted felons, such as those who have

Even though Pennsylvania suspends the franchise during the period of incarceration, it does not require the removal of registrants from voter rolls due to incarceration for a felony conviction. Rather, Section 1909(a) of the Pennsylvania Voter Registration Act, like the NVRA, directs that "[a]n elector's registration shall not be canceled except" if the voter dies, changes residence, asks to be taken off the list, or removal is necessary to comply with the NVRA.[24] As noted above, the NVRA refers only to state law, death, change in residence, or request of the registrant.

### iii. Help America Vote Act

The HAVA was enacted in 2002 to help improve the equipment used to cast votes, the way registration lists are maintained, and how polling operations are conducted.[25] Most relevant here, the HAVA builds on the NVRA by requiring that each state maintains a computerized database for voter registrations.[26] Similar to the NVRA, the HAVA requires states to "perform list maintenance" of the computerized voting rolls.[27] It also attempts to increase voter participation by limiting the manner in which states may remove voters from the voting rolls. The HAVA provides that states may not remove individuals from the voter rolls unless they do so "in accordance with the provisions of the National Voter Registration Act."[28] In addition, should a state seek to remove a registered voter from the list due to death or criminal conviction, states must "coordinate the computerized

---

been sentenced to probation or released on parole, may vote.").

[24] 25 Pa. Cons. Stat. § 1901(a).

[25] Daniel P. Tokaji, *Early Returns on Election Reform: Discretion, Disenfranchisement, and the Help America Vote Act*, 73 Geo. Wash. L. Rev. 1206, 1207 (2005).

[26] 52 U.S.C. § 21083(a)(1)(A).

[27] *Id.* § (a)(2)(A).

[28] *Id.* § (a)(2)(A)(i). As we noted earlier, the Congressional goals in enacting the NVRA include: increasing the number of registered voters and increasing participation in federal elections. 52 U.S.C. § 20501.

list with State agency records."[29] This is the only reference in the HAVA to removal of voters from the rolls due to criminal conviction.

Unlike the NVRA, however, the HAVA does not include a private right of action that allows aggrieved parties to sue nonconforming states. Subchapter IV of the HAVA includes only two mechanisms for enforcement: (1) a civil action brought by the Attorney General,[30] and (2) administrative complaint.[31]

## II. Discussion[32]

As we noted at the outset, we must determine whether the NVRA requires the Philadelphia City Commissioners to purge the voter rolls of individuals who are currently incarcerated for a felony conviction. The ACRU argues that it does, relying on Section 8(a)(3) and 8(a)(4) of the NVRA as read together with the HAVA. Because Pennsylvania does not permit individuals to vote while incarcerated for a felony, the ACRU argues, the Commissioners are required to remove them from the rolls. We disagree.

---

[29] *Id.* § (a)(2)(A)(ii)(1).

[30] *Id.* § 21111.

[31] *Id.* § 21112.

[32] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. When reviewing an order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), our review of the district court is plenary. *See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011). The Rules of Civil Procedure demand that a plaintiff present "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

10

Like the District Court, we need look no further than the text of Section 8 itself to resolve this dispute. "When [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the test is not absurd—is to enforce it according to its terms."[33] Here, the unambiguous text of Section 8 reveals that while states are required to make reasonable efforts to remove registrants for certain reasons, states are merely permitted—not required—to provide for removal of registrants from the official list based on criminal conviction.

Congress's only reference to criminal conviction in the statute is contained in Section 8(a)(3). Section 8(a)(3) states that "each State shall . . . provide that the name of a registrant *may not be removed* from the official list of eligible voters *except*" among other reasons, "as provided by State law, by reason of criminal conviction."[34] The statute thus places an obligation on the States to ensure that registrants are not removed improperly. Thus, Congress limited the authority of states to encumber voter participation by permitting states to only remove registrants for the exceptions specified. As set forth above, under Section 8, states can remove a voter: if the voter asks to be taken off the list, dies, changes residence, or becomes ineligible under state law because of criminal conviction or mental incapacity.[35]

This reading is consistent with the NVRA's central purpose of "ensur[ing] that, once registered, voters could not be removed from the registration rolls" for improper purposes.[36] Thus, given the importance of the right to vote,[37]

---

[33] *United States v. Moreno*, 727 F.3d 255, 259 (3d Cir. 2013) (quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (alteration omitted).

[34] 52 U.S.C. § 20507(a)(3) (emphasis added).

[35] *Id.*

[36] *Welker v. Clarke*, 239 F.3d 596, 598–99 (3d Cir. 2001).

[37] *See Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966) ("[T]he right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights . . . ." (quoting *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964)).

we emphasize that Section 8(a)(3) is designed to protect voters from improper removal and only provides very limited circumstances in which states may remove them. Therefore, contrary to the ACRU's assertions, the text of Section 8(a)(3) places no affirmative obligations on states (or voting commissions) to remove voters from the rolls. As its text makes clear, NVRA was intended as a shield to protect the right to vote, not as a sword to pierce it.

The following subsection, 8(a)(4), similarly does not require states to purge voters convicted of felonies from the rolls. It does, however, place an affirmative obligation on states to make "reasonable efforts" to remove registrants in certain specific circumstances in order to ensure the accuracy of the voter lists. This limited authority is consistent with the NVRA's purpose to "ensure that accurate and current voter registration rolls are maintained." [38] Here again, Congress was careful to very narrowly limit the circumstances that would justify removing voters in the interest of ensuring the accuracy of voting lists. Section 8(a)(4) mandates that "each State shall . . . make[] a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of— (A) the death of the registrant; or (B) a change in the residence of the registrant."[39] By its terms, the mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away.[40] Removal due to criminal conviction is not included on this list of mandatory purging, and we will not amend the statute by reading that requirement into its text when Congress obviously chose not to do so.[41]

---

[38] 52 U.S.C. § 20501(b).

[39] *Id.* § 20507(a)(4).

[40] *See Orozco-Velasquez v. Att'y Gen.*, 817 F.3d 78, 83 (3d Cir. 2016) ("The word 'shall' is ordinarily the language of command." (quoting *Alabama v. Bozeman*, 533 U.S. 146, 153 (2001)).

[41] *See United States v. McQuilkin*, 78 F.3d 105, 108 (3d Cir. 1996) ("It is a canon of statutory construction that the inclusion of certain provisions implies the exclusion of others. The doctrine of *inclusio unius est exclusio alterius* 'informs a court to exclude from operation those items not included in a

Our conclusion is further bolstered by the NVRA's legislative history. The Senate Report explains "States *are permitted* to remove the names of eligible voters from the rolls at the request of the voter or as provided by State law by reason of mental incapacity or criminal conviction."[42] The Report continues: "[i]n addition, States *are required* to conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists by reason of death or a change in residence."[43] This obvious distinction between the permissive language in (a)(3) and the mandatory language in (a)(4) demonstrates that the statute and the legislative history are in agreement: States and election officials are permitted—but not required—to remove individuals ineligible to vote under state law due to criminal conviction.

The ACRU makes several arguments in an attempt to rewrite the statute to support its desired outcome. First, the ACRU cites a case decided by the District Court for the Western District of Missouri to assert that Section 8(a)(4)'s affirmative obligation that states "make[] reasonable effort[s] to remove the names of ineligible voters" in fact "appl[ies] to the other subsections of Section 20507," including subsection 8(a)(3).[44] On this basis, the ACRU asserts that the "NVRA itself contains a requirement that election officials make a reasonable effort to remove registrants who are ineligible by operation of state law as a result of criminal conviction."[45]

---

list of elements that are given effect expressly by the statutory language.'" (quoting *In re TMI*, 67 F.3d 1119, 1123 (3d Cir. 1995)).

[42] S. Rep. No. 103-6, at 18 (1993) (emphasis added).

[43] *Id.* (emphasis added). *See also* H.R. Rep. No. 103-9, at 15 (1993) ("Recognizing the essential need to maintain the integrity of the voter registration lists, the bill requires that States conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters *by reason of death or by a change of residence*.") (emphasis added).

[44] Appellant's Br. 14.

[45] Appellant's Br. 14.

This argument not only mangles the statute beyond recognition, it also misrepresents the non-precedential case it relies on. There is simply no support for the proposition that the mandatory list-maintenance provision in subsection 8(a)(4) applies to subsection 8(a)(3). Further, the district court case the ACRU cites for this proposition—*United States v. Missouri*—held no such thing. Rather, the court considered only the text of Section 8(a)(4) itself—*it did not discuss or mention subsection 8(a)(3) at all*—and held that subsection (a)(4)'s "reasonable effort" requirement applied to the subsections *incorporated by reference within Section 8(a)(4) itself*.[46] The statute serves as its own illustration:

> In the administration of voter registration for elections for Federal office, each State shall . . .
>
> (4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of—
>> (A) the death of the registrant; or
>> (B) a change in the residence of the registrant, in accordance with *subsections (b), (c), and (d)* . . . [47]

Notably, unlike the subsections *Missouri* discussed (italicized above), subsection 8(a)(3) is not incorporated by reference in (a)(4). Thus, even if the analysis of a district court in Missouri were persuasive, that court's analysis would still be irrelevant to our inquiry here.

---

[46] *United States v. Missouri*, No. 05-4391-CV-C-NKL (NKL), 2006 WL 1446356, at *8 (W.D. Mo. May 23, 2006), *rev'd*, 535 F.3d 844 (8th Cir. 2008) ("While the NVRA is ambiguous, both its text and common sense suggests that Congress intended the 'reasonable effort' standard of § 1973gg-6(a)(4) to apply to subsections (b), (c) and (d). Subsection (a)(4), which contains the reasonable effort standard, is a general, introductory provision and incorporates by reference subsections (b), (c) and (d).").

[47] 52 U.S.C. § 20507(a)(4).

In its Reply Brief, the ACRU doubles down on this argument and asserts that because (a)(4) references subsection 8(c) and because subsection 8(c)(2)(B) in turn references subsection (a)(3), the mandatory language of (a)(4) therefore applies to (a)(3) via 8(c).[48] This is exactly the kind of statutory contortion that led the District Court to respond to the ACRU's arguments by threatening to impose sanctions for blatant misrepresentation of the statute. Nothing in this game of statutory Twister plausibly suggests that the plainly mandatory language in (a)(4) should be substituted for the plainly permissive language of (a)(3).[49]

The ACRU then turns to another federal statute for support. It argues that the NVRA is "enhanced by the parallel obligations found in the Help America Vote Act."[50] The ACRU argues that when read together, "list maintenance regarding ineligible felons is mandatory in states such as Pennsylvania that have determined that incarceration for a felony is disqualifying."[51] The ACRU points to two provisions of HAVA that purportedly "broaden[]" or

---

[48] Reply Br. 10–11.

[49] Indeed, subsection (c)(2)(B)'s reference to (a)(3) specifically states that the removal of names should be conducted "on a basis *described in paragraph (3)(A) . . .* of subsection (a)." 52 U.S.C. § 20507(c)(2)(B) (emphasis added). As noted, Section 8(a)(3) is permissive, not mandatory, and nothing in subsection (c)(2)(B) changes that. At oral argument, the ACRU relied even more heavily on Section 8(c)(2)(A), arguing that it mandates states to remove "ineligible voters" within 90 days of the election and therefore, incarcerated felons must be removed. *E.g.* Oral Arg. at 1:01:37, 1:02:46. *See also* 52 U.S.C. § 20507(c)(2)(A) ("A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters."). For the reasons already discussed above and for the reasons outlined by the District Court, we do not find this argument persuasive. *See Am. Civil Rights Union*, 2016 WL 4721118, at *6.

[50] Appellant's Br. 3.

[51] Appellant's Br. 8–9.

15

"augment" the NVRA: (1) Section 21083(a)(4)(A), which requires election officials to make "a reasonable effort to remove registrants who are ineligible from the official list of ineligible voters,"[52] and (2) Section (a)(2)(A)(ii) which directs that a "State shall coordinate the computerized list with State agency records on felony status" "[f]or the purposes of removing names of ineligible voters [under the NVRA Section 8(a)(3)]."[53]

However, even if that interpretation is correct, the ACRU would still be out of court. Unlike the NVRA, the HAVA does not include a private right of enforcement. By its text, the HAVA only allows enforcement via attorney general suits or administrative complaint.[54] Not surprisingly, the ACRU cites nothing to support its assumption that it may graft the NVRA's private right of action onto a wholly separate statutory scheme simply because the second statute refers to the first. To the contrary, the fact that the NVRA provides for a private right of action while the HAVA does not clearly indicates Congress's intent to limit HAVA's enforcement mechanism to preclude a private suit.[55] "Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly."[56] Furthermore, as the District Court noted, circuit courts do not even agree about whether plaintiffs may bring a Section 1983 action to enforce the HAVA.[57] Thus, insofar as

---

[52] Appellant's Br. 11–12 (quoting 52 U.S.C. § 21083(a)(4)).

[53] Appellant's Br. 15 (quoting 52 U.S.C. § 21083(a)(2)(A)(ii)).

[54] 52 U.S.C. §§ 21111, 21112.

[55] *See In re Federal-Mogul Glob. Inc.*, 684 F.3d 355, 373 (3d Cir. 2012) ("[W]here the legislature has inserted a provision in only one of two statutes that deal with closely related subject matter, it is reasonable to infer that the failure to include that provision in the other statute was deliberate rather than inadvertent.").

[56] *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979).

[57] *Am. Civil Rights Union*, 2016 WL 4721118, at *5 (comparing *Colon-Marrero v. Velez*, 813 F.3d 1, 13 (1st Cir. 2016) (recognizing there is no private right of action under

the HAVA places a burden on state election officials above and beyond the NVRA, the ACRU is unable to enforce such requirements in this suit.

Even assuming the ACRU could ground a right to sue in the HAVA, the statute would still not support the ACRU's claims. The unambiguous text of the HAVA simply does not require election officials to purge voter rolls of incarcerated felons.

The first section of the HAVA relied on by the ACRU, Section 21083(a)(4)(A), states that "[t]he State election system shall include provisions to ensure . . . [a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."[58] The ACRU argues that this section requires states to remove all registrants who are unable to cast a ballot under state law. However, the HAVA also states that "such system" should be "consistent with the National Voter Registration Act of 1993."[59] Moreover, even if that directive was not clear, Section (2)(A)(i) states that "[i]f an individual is to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act of 1993."[60] We have already explained that the NVRA does not require election officials to purge registrants from the rolls who are not permitted to vote due to felony conviction. And by its text, the HAVA requires no more.[61]

---

the HAVA, but permitting a Section 1983 suit); *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) (same); with *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 735 (9th Cir. 2012) (recognizing there is no private right of action under the HAVA, and foreclosing a Section 1983 suit)).

[58] 52 U.S.C. § 21083(a)(4)(A).

[59] *Id.*

[60] *Id.* § 21083(2)(A)(i).

[61] In its opinion, the District Court went a step further and concluded that individuals incarcerated due to criminal conviction are not "ineligible voters" under the HAVA because "Pennsylvania law 'merely suspends the franchise for

The ACRU also argues that the District Court's interpretation is inconsistent with provisions of the HAVA and the NVRA that set forth reporting and information-sharing requirements designed to assist states in removing registrants convicted of felonies. Specifically, the ACRU points to: (1) 52 U.S.C. § 20507(g)(1), which requires U.S. attorneys to send written notice of felony convictions for list maintenance purposes; (2) 52 U.S.C. § 20507(g)(5), which requires state election officials to give this information to local voter registration officials; and (3) 52 U.S.C. § 21083(a)(2)(A)(ii), which requires states to coordinate with law enforcement agencies regarding felony status. The ACRU argues that "the only plausible reason for requiring this information to be sent to local election officials is so that they can make note of the registrants who are ineligible by reason of criminal status,"[62] and therefore, the Commissioners are required to purge or make note of those individuals.[63]

As the District Court so aptly reasoned, a requirement that information be shared does not impose a duty on election officials to subsequently act on that information by purging those individuals from the voter rolls in disregard of the law

a defined period.'" *Am. Civil Rights Union*, 2016 WL 4721118 at *9 (quoting *Mixon*, 759 A.2d at 448 n.11). We agree. Moreover, under the definition of "qualified absentee voter," ineligibility depends upon "confinement," and, under state law, individuals convicted of felonies are permitted to vote if they are on furlough from prison or are serving a period of home confinement. Oral Arg. at 1:22; *Voting Rights* at 2. Thus, they remain eligible to vote but are not provided access to the ballot while incarcerated.

[62] Appellant's Br. 16.

[63] The ACRU argues that if the NVRA does not require the Commissioners to purge voters that are incarcerated for a felony conviction, it must at the very least require that those voters be "flagged" or "notated" to indicate that they are not currently able to vote. Appellant's Br. 18–19. The ACRU cites no authority for the proposition and we can find none. We thus decline to read a notation requirement into the statute where Congress has not written it.

of their state.[64] In addition, contrary to the ACRU's assertions, we do not think the District Court's reading makes these provisions superfluous or redundant. The information-sharing provisions are no doubt very helpful in states such as Florida and Kentucky where individuals convicted of felonies are permanently deprived of the right to vote. By contrast, the information would have no utility in Maine and Vermont where citizens may vote regardless of criminal status. Congress simply required the sharing of certain information so that states would have the information necessary to maintain voter lists pursuant to state law. As the District Court observed, "[i]nformation sharing in itself is important, and ensures that all states will have the information necessary regarding federal convictions, whether that information is acted upon or not."[65] These information-sharing provisions certainly do not dictate that Maine or Vermont must act to remove felons from the voter rolls contrary to state law, and they do not so dictate here.

Finally, the ACRU argues that the District Court was wrong to "look at particular subsections [of the statutes] one by one rather than as a whole" to reach its conclusion.[66] Certainly context matters, and a statute must be considered as a whole.[67] Yet here, neither statute says what the ACRU claims—neither the NVRA nor the HAVA come close to requiring the Commissioners to purge the voter rolls of individuals incarcerated due to felony conviction.

Moreover, requiring the Commissioners to purge the rolls of incarcerated felons would contravene one of the main goals the NVRA itself. Congress has declared that the statute is designed to "enhance[] the participation of eligible citizens

---

[64] *Am. Civil Rights Union*, 2016 WL 4721118, at *8.

[65] *Id.*

[66] Appellant's Br. 10.

[67] *King v. Burwell*, 135 S. Ct. 2480, 2492 (2015) ("[W]e must do our best, bearing in mind the fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (internal quotation marks omitted).

as voters in elections for Federal office."[68] In Pennsylvania, individuals convicted of a felony are citizens who can vote the moment they are released from prison, regardless of probation or parole status.[69] If an individual is purged from the rolls while incarcerated, he or she will be required to re-register after release. Voter registrations take time to process, and the state further imposes a 30-day cutoff before an election, after which new registrants are ineligible to vote in an upcoming election.[70] However, under Pennsylvania law, a previously-registered individual released the morning of November 8, 2016 would be eligible to vote in the election that day. The ACRU's position would preclude that eligible voter from casting a vote, a result that would clearly contravene Congress's announced intention of protecting access to the polls and increasing voter turnout.[71]

Accordingly, we hold that the very thorough and thoughtful opinion of the District Court is clearly correct and entirely in keeping with the "whole law" and the "object and policy" of the NVRA.[72] It is the ACRU's interpretation of the

---

[68] 52 U.S.C. § 20501(b)(2).

[69] *See Mixon*, 759 A.2d at 451; *Owens*, 711 F.2d at 26.

[70] 25 Pa. Stat. and Cons. Stat. Ann. § 1326.

[71] We also note that during purging efforts, election officials often inadvertently remove voters not convicted of felonies which even more dramatically disenfranchises eligible voters. As Amici Curiae Project Vote and Demos outline in their brief, officials that have undertaken purges in the past have removed hundreds—if not thousands—of registrants who have not been convicted of felonies due to improper matching procedures. Amici Curiae Br. 17–23 (citing Myrna Pérez, Brennan Center for Justice, *Voter Purges* (2008), http://www.brennancenter.org/sites/default/files/legacy/public ations/Voter.Purges.f.pdf). As a result, registrants such as those with similar names as convicted felons or registrants only convicted of misdemeanors are improperly purged from the rolls, and most do not find out until they are denied a ballot on Election Day. *See* Pérez, *supra* at 2–3.

[72] *See* Appellant's Br. 11 (quoting *Prestol Espinal v. Att'y Gen.*, 653 F.3d 213, 217 (3d Cir. 2011)).

20

NVRA, not the Commissioners', that most threatens the goals of the statute and the integrity of the vote.

### III. Conclusion

In summary, because the ACRU is unable to present a plausible claim that the NVRA requires the Commissioners to purge Philadelphia's voter rolls of individuals incarcerated due to felony conviction, we affirm the District Court's dismissal of the ACRU's suit.