# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TERRI MICHELLE REYLEK,    )
                                )
           Petitioner,    )
    v.                      )        C.A. No. K22M-07-010 NEP
                                )
ANTHONY J. ALBENCE,    )
                                )
           Respondent.    )

Submitted: September 25, 2023
Decided: December 21, 2023

## MEMORANDUM OPINION AND ORDER

*Upon Respondent's Motion to Dismiss Petitioner's Declaratory Judgment Claim*

**GRANTED**

Terri Michelle Reylek, Dover, Delaware, *Pro Se Petitioner*.

Nicholas D. Picollelli, Jr., Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for Respondent*.

**Primos, J.**

Before this Court is the Motion to Dismiss filed by Respondent Anthony J. Albence, State Election Commissioner ex officio ("Albence"),[1] seeking dismissal for failure to state a claim upon which relief can be granted of Count 1, a claim for declaratory judgment, of the Amended Petition for Writ of Mandamus (the "Amended Petition") filed by Petitioner Terri Michelle Reylek ("Reylek").[2] For the reasons that follow, the Motion to Dismiss is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

On July 19, 2022, Reylek, a registered voter in the State of Delaware, submitted a petition for writ of mandamus (the "Petition"),[4] alleging that Delaware's electronic voting machines were not properly certified by the United States Election Assistance Commission (the "EAC"), in violation of Delaware statutory authority.[5] Reylek alleged that the laboratory that had tested the voting machines was not

---

[1] Throughout previous decisions in this case, Albence has been referred to as "Respondent" and "Election Commissioner." Here, for the sake of simplicity, the Court will refer to him by his last name, "Albence."

[2] In a previous decision, the Court dismissed the other counts of Reylek's Amended Petition (Counts 2 through 5) in response to Albence's Motion to Dismiss and deferred decision as to Count 1. *Reylek v. Albence*, 2023 WL 4633411, at *9 (Del. Super. July 19, 2023).

[3] This case's factual and procedural background will not be repeated in full. As such, please see *Reylek v. Albence*, 2022 WL 13785951 (Del. Super. Oct. 24, 2022) [hereinafter "*Reylek 2022*"]; *Reylek v. Albence*, 2023 WL 142522 (Del. Super. Jan. 10, 2023) [hereinafter "*Reylek 2023 I*"]; and *Reylek v. Albence*, 2023 WL 4633411 (Del. Super. July 19, 2023) [hereinafter "*Reylek 2023 II*"], for a more thorough recitation of this case's history. The Court incorporates by reference the factual and procedural backgrounds from those decisions here.

[4] Verified Pet. for Writ of Mandamus (D.I. 1) [hereinafter "Pet."]. Pursuant to 10 *Del. C.* § 564, the Superior Court has statutory authority to issue writs of mandamus, and pursuant to 29 *Del. C.* § 10143, to compel agency action.

[5] Pet. at 20–22. Under federal law, the EAC "shall provide for the testing, certification, decertification, and recertification of voting system hardware and software by accredited laboratories." 52 U.S.C. § 20971(a)(1). In addition, "[a]t the option of a State, the State may provide for the testing, certification, decertification, or recertification of its voting system hardware and software by the laboratories accredited by the [EAC] under this section." 52 U.S.C. § 20971(a)(2). Delaware exercised that option: "[a] voting device or system purchased by the State must be certified by the [EAC], or designated federal authority, as meeting or exceeding the voluntary voting systems standards or guidelines as promulgated by the [EAC], or designated federal authority, before delivery to and acceptance by the State." 15 *Del. C.* § 5001A(c).

properly accredited because: (1) the EAC Certificate of Accreditation was signed by the EAC's Executive Director, not by the EAC's Chairperson; and (2) the proper procedures were not followed to reaccredit the laboratory after a lapse in its accreditation.[6]

On September 29, 2022, Reylek filed a Motion to Expedite Proceedings ("Motion to Expedite") to prevent further alleged violations from occurring during the then-upcoming November 8, 2022 election.[7] On October 4, 2022, Albence filed a Motion to Dismiss the Petition ("First Motion to Dismiss") under Superior Court Civil Rule 12(b)(6) on the basis that none of the requests for relief in the Petition were appropriate for a mandamus action.[8] On October 14, 2022, Reylek filed an "Answer in Opposition to the Motion to Dismiss" ("Motion Answer") in which she sought to provide "[c]larification and amended relief requests."[9] On October 24, 2022, following oral argument, the Court denied the Motion to Expedite via a written order.[10]

On November 1, 2022, in an apparent effort to address the issues raised by the Court's written order, Reylek filed a document styled "Amendment to Answer in Opposition to the Motion to Dismiss of Respondent Anthony Albence" ("Amended Motion Answer"), which included a modified version of the relief requests that were included in the Motion Answer.[11]

---

[6] *Reylek 2023 II*, 2023 WL 4633411, at *1.

[7] Mot. to Expedite (D.I. 11).

[8] Resp't's Mot. to Dismiss Terri Michelle Reylek's Pet. for a Writ of Mandamus (D.I. 12) at 2 [hereinafter "Mot. to Dismiss"]. Albence indicated that he intended to rely on the Motion to Dismiss "in lieu of a separate response" to the Motion to Expedite. *Id.* at 1 n.1.

[9] Answer in Opp'n to the Mot. to Dismiss of Resp't Anthony Albence Filed by Terri Reylek (D.I. 14) at 4–6.

[10] *Reylek 2022*, 2022 WL 13785951, at 2.

[11] Amendment to Answer in Opp'n to the Mot. to Dismiss of Resp't Anthony Albence (D.I. 17).

3

On January 10, 2023, the Court granted the First Motion to Dismiss but did not address Reylek's new relief requests in the Amended Motion Answer.[12] The dismissal, however, was without prejudice, and Reylek was given an opportunity to file an amended petition.[13] On January 20, 2023, Reylek filed the Amended Petition, which included modified requests for relief.[14] Specifically, Reylek rephrased the mandamus relief previously requested, invoked one new statutory basis for mandamus relief, and added one declaratory judgment count.[15]

On February 7, 2023, Albence filed a Motion to Dismiss the Amended Petition under Superior Court Civil Rule 12(b)(6) ("Second Motion to Dismiss"), arguing again that Reylek had failed to request any valid relief suitable for a mandamus action.[16] On February 21, 2023, Reylek filed a response to the Second Motion to Dismiss.[17] On March 8, 2023, the Court requested supplemental briefing on the issue of whether the "actual controversy" prerequisite for a declaratory judgment action had been met, and whether the Court, in its discretion, should entertain such an action on the facts alleged.[18] On March 24 and 28, 2023, respectively, Reylek and Albence filed their supplemental briefs.[19] Reylek filed a response to Albence's supplemental brief on April 3, 2023,[20] and Albence filed a response to Reylek's supplemental brief on April 6, 2023.[21]

---

[12] *See Reylek 2023 I*, 2023 WL 142522, at *1, *7.
[13] *Id.* at *6–7.
[14] Am. Pet. for Writ of Mandamus Filed by Terri Michelle Reylek (D.I. 21) [hereinafter "Am. Pet."].
[15] The Amended Petition requests a "Declaratory Judgement that NO voting systems/machines are legal for use in Delaware elections unless they are legally certified pursuant to Title 15, § 5000A, 5001A(11)-(C), 29 *Del. C.* § 10001, and meet all the requirements outlined in the Help America Vote Act (HAVA) of 2002, as long as Delaware Code mandates compliance [sic]." *Id.* at 30.
[16] D.I. 24.
[17] D.I. 26.
[18] D.I. 27.
[19] D.I. 28, 29.
[20] D.I. 30.
[21] D.I. 31.

On July 19, 2023, the Court granted in part and deferred in part the Second Motion to Dismiss.[22] The Court dismissed the mandamus counts, but for reasons discussed therein, deferred a decision on the declaratory judgment count and ordered the parties to file additional supplemental briefing to address the narrow issue of whether 15 *Del. C.* §§ 5000A and 5001A(c) create an implied private right of action.[23]

Reylek filed her second supplemental brief on August 8, 2023,[24] and filed an amended supplemental brief on August 25, 2023.[25] Albence filed his second supplemental brief on September 7, 2023.[26] The parties filed their respective responses on September 15 and 21, 2023.[27]

Section 5000A provides that "[i]n any general, special, or primary elections, an electronic voting system must be used and must comply with the requirements of this chapter,"[28] i.e., the requirements of Chapter 50A of Title 15 of the Delaware Code. Section 5001A(c) provides that "[a] voting device or system purchased by the State must be certified by the [EAC], or designated federal authority, as meeting or exceeding the voluntary voting systems standards or guidelines as promulgated by the [EAC], or designated federal authority, before delivery to and acceptance by the State."[29]

---

[22] *Reylek 2023 II*, 2023 WL 4633411, at *9.
[23] *Id.*
[24] D.I. 35.
[25] Am. Suppl. Br. Addressing Implied and Private Right of Action (D.I. 37) [hereinafter "Reylek's Am. Suppl. Br. PROA"].
[26] D.I. 38.
[27] D.I. 39, 40.
[28] 15 *Del. C.* § 5000A.
[29] *Id.* § 5001A(c).

5

## STANDARD OF REVIEW

Pursuant to Superior Court Civil Rule 12(b)(6), when the Court considers a motion to dismiss for failure to state a claim:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[30]

"A *pro se* pleading is judged by a 'less stringent standard' than a pleading or document filed by an attorney."[31] However, "[t]here is no different set of rules for *pro se* plaintiffs, and the trial court should not sacrifice the orderly and efficient administration of justice to accommodate an unrepresented plaintiff."[32] Moreover, "[w]henever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."[33] "Notably, '[t]he burden of establishing the Court's subject matter jurisdiction rests with the party seeking the Court's intervention.'"[34]

## DISCUSSION

The only issue that the Court must now address is whether 15 *Del. C.* §§ 5000A and 5001A(c) create an implied private right of action to sustain an actual controversy for declaratory judgment purposes. For the reasons that follow, the Court finds that there is no implied private right of action under those statutes for an individual registered voter.

---

[30] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (cleaned up).

[31] *Mason v. Dover Fed. Credit Union*, 2018 WL 4026554, at *2 (Del. Super. Aug. 22, 2018) (quoting *Johnson v. State*, 442 A.2d 1362, 1364 (Del. 1982)).

[32] *Draper v. Med. Ctr. of Delaware*, 767 A.2d 796, 799 (Del. 2001).

[33] Super. Ct. Civ. R. 12(h)(3).

[34] *B&B Fin. Servs., LLC v. RFGV Festivals, LLC*, 2019 WL 2006487, at *3 (Del. Super. May 2, 2019) (alteration in original) (quoting *Airbase Carpet Mart, Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Dec. 15, 2015)).

Under Delaware law, the test for whether there is an implied right of action under a statute has three factors:

> (1) whether the plaintiff is a member of a class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent to grant or deny a private right of action; and (3) whether recognition of an implied private right of action would advance the statute's purpose.[35]

"A private right of action may be implied if there is 'strong evidence that the legislature intended to create it.'"[36] The second factor, statutory intent, is usually dispositive under contemporary analysis.[37]

## I. Reylek Is Not a Member of a Class for Whose Especial Benefit the Statute Was Enacted.

Reylek asserts that, pursuant to 15 *Del. C.* §1701, she is a qualified voter.[38] Therefore, she argues, she is within the class of persons for whose especial benefit the statute was enacted.[39]

The statutes at issue regulate electronic voting systems, which are used in democratic political elections, and democratic political elections, at least arguably, benefit registered voters. However, the Court is not persuaded that the statutes in question were enacted for the especial benefit of those voters. Rather, it appears that these provisions were enacted to "assure the people's right to free and equal

---

[35] *Reylek 2023 II*, 2023 WL 4633411, at *9 (citing *Chance v. Kraft Heinz Foods Co.*, 2018 WL 6655670, *4 (Del. Super. Dec. 17, 2018) (quoting *Rays Plumbing & Heating Serv., Inc. v. Stover Homes, L.L.C.*, 2011 WL 3329384, at *2 (Del. Super. July 26, 2011))).

[36] *Chance*, 2018 WL 6655670, at *4 (quoting *Rays Plumbing*, 2011 WL 3329384, at *4).

[37] *Reylek 2023 II*, 2023 WL 4633411, at *9; *see also O'Neill v. Town of Middletown*, 2006 WL 205071, at *19 (Del. Ch. Jan. 18, 2006) ("[I]n determining the existence of implied rights of action, the focus is now to be placed on the second prong of the three-prong test[.]"); *Rays Plumbing*, 2011 WL 3329384, at *3 ("The second factor of the *Cort* test, which is determinative under the newer *Sandoval* analysis, is more difficult.").

[38] 15 *Del. C.* §1701 lists the qualifications for registration as a "qualified voter."

[39] Reylek's Am. Suppl. Br. PROA at 2–3 ¶ 1.

elections," as stated in the purpose clause of Title 15.[40]  Thus, it is "the people" as a whole—not even qualified or registered voters as a subset of that group—for whose interest the statutes were promulgated.

In *Cannon v. University of Chicago*, the United States Supreme Court noted that it "has been especially reluctant to imply causes of action under statutes that create duties on the part of persons for the benefit of the public at large."[41]  Similarly, in *O'Neill v. Town of Middletown*, where the plaintiffs sought to assert an implied right of action under Chapters 91 and 92 of the Delaware Code, which deal with land use planning, the Delaware Court of Chancery noted that "[a]t most, Chapters 91 and 92 can be said to create merely a general interest in seeing agency compliance with the law that the Plaintiffs seek to vindicate; but such an interest is far too broad and vague to permit a finding of an implied right of action."[42]

## II. There Is No Indication of Legislative Intent to Create an Implied Private Right of Action or Remedy.

The Court finds that the second factor also weighs in favor of Albence because (1) Chapter 50A promotes a general interest in government compliance with the law, not the rights of individuals, and (2) the statutory scheme focuses on the agency doing the regulating and therefore does not provide a private remedy.

Reylek argues that 15 *Del. C.* §§ 5000A and 5001A(c) "show the intent of the Legislature to protect 'eligible voters' by providing the means for a 'verifiably secure' way to cast a vote in 'free and equal elections.'"[43]  In opposition, Albence argues that the legislature's intent is to regulate the purchase and use of electronic

---

[40] 15 *Del. C.* § 101A.
[41] 441 U.S. 677, 690 n.13 (1979).
[42] 2006 WL 205071, at *21.
[43] Reylek's Am. Suppl. Br. PROA at 4 ¶ 2.

voting systems, rather than the individuals protected.[44] The Court agrees with Albence.

The General Assembly is "presumed to know how the statute would be interpreted or construed by the courts."[45] When interpreting a statute, the Court's duty is to find the legislative intent and then to determine whether it displays an intent to create not only a private right of action, but also a private remedy.[46] The latter point is dispositive.[47] Without legislative intent to create a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."[48]

A previous decision by this Court in *Korn v. Wagner* is instructive.[49] There, the plaintiff, a Delaware resident and taxpayer, sought a declaratory judgment and writ of mandamus because of the State Auditor's alleged failure to audit certain school districts for a number of years.[50] The statute at issue provided that the auditor "shall conduct postaudits of local school district tax funds budget and expenditures annually [sic]."[51] The issue was whether the defendant Auditor's alleged inaction implicated any of the plaintiff's rights as a general taxpayer.[52] The plaintiff argued that the auditor's duty was "a mandatory right to all school district taxpayers that their local district tax funds in each individual school district be audited on an annual

---

[44] Resp't's Resp. to Terri Michelle Reylek's Am. Suppl. Br. Addressing Implied and Private Right of Action (D.I. 40) at 3 ¶ 4 [hereinafter "Resp't's Resp. to Reylek's Am. Suppl. Br. PROA"].

[45] *Chance*, 2018 WL 6655670, at *6.

[46] *See id.* at *5 (citing *Murphy v. Bd. of Pension Trs.*, 442 A.2d 950, 951 (Del. Super. 1982)); *see also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.").

[47] *Alexander*, 532 U.S. at 286.

[48] *Id.* at 286–87.

[49] *See generally* 2012 WL 5355662 (Del. Super. Sept. 28, 2012).

[50] *Id.* at *1.

[51] 29 *Del. C.* § 2906(f).

[52] *Korn*, 2012 WL 5355662, at *3.

9

basis."[53]  The Court, however, was "not convinced that the statute creates an obligation owed to an individual taxpayer nor is sufficient to create a private right of action."[54]

In *Korn*, this Court followed the Court of Chancery's implied private right of action analysis in *O'Neill*.[55]  In that case, the issue was essentially the same:  whether the statutory text evidenced a legislative intent to give the plaintiffs a private right of action and a private remedy against the government for noncompliance with a statute.[56]  As indicated previously in the discussion of the first prong of the implied-right-of-action test, the Court of Chancery did not find a private right of action because the statutes at issue there promoted only a "general interest" in governmental compliance with the law.[57]  As to the private remedy, the *O'Neill* Court cited to the United States Supreme Court's decision in *Alexander v. Sandoval*,[58] which held that where statutes "focus[] neither on the individuals protected nor even on the [entities] being regulated, but on the agenc[y] that will do the regulating[,]"[59] then "there is far less reason to infer a private remedy in favor of individual persons."[60]

Here, Reylek's claim is quite similar to the claims in *Korn* and *O'Neill*.  In both of those cases the Courts refused to find an implied private right of action and remedy for a member of the public at large.[61]  As to lack of a private right of action, there is no meaningful difference between a plaintiff's status as a registered voter or

---

[53] *Id.*

[54] *Id.*

[55] *See id.* (citing 2006 WL 205071 (Del. Ch. Mar. 7, 2006)).

[56] *See id.*; *see also O'Neill*, 2006 WL 205071, at *7–8, *21.

[57] *O'Neill*, 2006 WL 205071, at *21.

[58] *Id.* at *22 n.185 (citing 532 U.S. at 289).

[59] *Alexander*, 532 U.S. at 289.

[60] *Id.* (cleaned up).

[61] *See Korn*, 2012 WL 5355662, at *3; *see also O'Neill*, 2006 WL 205071, at *21.

as a general taxpayer, i.e., both are members of the public at large.[62] Second, because §§ 5000A and 5001A(c) regulate the purchase and use of electronic voting systems by the Department of Elections (the "Department"), the focus of the statutes is on the agency in question, the Department, rather than on the individuals protected or on some other entity that is being regulated; thus, "there is far less reason to infer a private remedy in favor of individual persons."[63]

## III. Recognizing An Implied Private Right of Action Would Not Advance the Statutes' Purpose.

The Court finds that the third factor weighs in favor of Albence as well. Reylek argues that the purpose of 15 *Del. C.* §§ 5000A and 5001(A)(c) is to "protect 'eligible voters' and define the means in which they cast votes[.]"[64] In response, Albence notes that the stated purpose of Title 15 is "to assure the people's right to free and fair elections."[65] Albence argues further that this "broad purpose" is narrowed by Sections 5000A and 5001(A)(c) because those statutes "incorporate and provide for the implementation of [the Help America Vote Act (the "HAVA")], and state statutes that incorporate HAVA do not create a private right of action."[66]

According to Title 15's general purpose clause, the Title seeks to "secure the right to free and equal elections and to preserve the integrity of the democratic political process" by establishing "an orderly system" for, *inter alia*, "the conduct

---

[62] *See Korn*, 2012 WL 5355662, at *2 ("[The plaintiff]'s interest in compelling [the defendant] to comply with [the statute] is no different from that of any other taxpayer."); *id.* at *3 ("The statute [plaintiff] seeks to enforce … is wholly concerned with duties of the auditor and does not directly or by implication create an enforceable right for school district taxpayers or the school districts themselves."); *O'Neill*, 2006 WL 205071, at *19 ("In Delaware, however, taxpayer standing is reserved for a narrow set of claims involving challenges either to expenditure of public funds or use of public lands."); *id.* at *16 n.140 ("Under traditional standards, a law that creates a duty to the general public does not give rise to privately enforceable rights.") (citations omitted).
[63] *Alexander*, 532 U.S. at 289.
[64] Reylek's Am. Suppl. Br. PROA at 4 ¶ 2.
[65] 15 *Del. C.* § 101A.
[66] Resp't's Resp. to Reylek's Am. Suppl. Br. PROA at 2 ¶ 2.

11

of primary and general elections"[67]  The express language of the individual statutory provisions in question supports that purpose.  Section 5000A provides that "[i]n any general, special, or primary elections, an electronic voting system must be used . . . ."[68]  Section 5001A(c) provides that an electronic voting system "purchased by the State must be certified by the United States Election Assistance Commission, or designated federal authority, as meeting or exceeding the voluntary voting systems standards or guidelines …."[69]

The HAVA also provides useful guidance.  Although neither § 5000A nor §5001A(c) cites to it, they do mention explicitly the EAC.  This is important because the HAVA established the EAC and its authority to "provide for the testing, certification, decertification, and recertification of its voting system hardware and software by the laboratories accredited by the [EAC] under this section."[70]  The HAVA "regulates the conduct of officials involved in the voting process[.]"[71]  Other courts have not interpreted the HAVA as conferring a private right of action.[72]  Notably, the United States Court of Appeals for the Third Circuit has not found a private right of action under the HAVA.[73]  Finally, as a practical matter, the statute's purpose would not be advanced if each and every member of the public was allowed to sue government officials for generalized grievances.[74]

---

[67] 15 *Del. C.* § 101A.
[68] *Id.* § 5000A.
[69] *Id.* § 5001A(c).
[70] *Graeff v. United States Election Assistance Comm'n*, 2023 WL 2424267, at *2 (E.D. Mo. Mar. 9, 2023) (alteration in original).
[71] *Id.* at *7 n.8.
[72] *See id.*
[73] *See Am. Civ. Rts. Union v. Phila. City Comm'rs*, 872 F.3d 175, 181 (3d Cir. 2017) ("[T]he HAVA does not include a private right of action that allows aggrieved parties to sue nonconforming states.").
[74] *Korn*, 2012 WL5355662, at *4 ("Korn's status as a New Castle County taxpayer gives him a voice with which to protest about government officials who neglect their duties, but that voice should be directed to the General Assembly or the electorate and not the courts.").

Reylek has failed to show how the finding of an implied right of action would advance either the general purpose of Title 15, i.e., assuring the people's right to free and fair elections, or the more narrowed purpose of Chapter 50A, i.e., the Department's implementation of electronic voting systems. Keeping in mind that a private right of action is not appropriate to enforce a general interest in agency compliance with the law, allowing a potential flurry of private suits seeking to enforce agency compliance with the law would only threaten to interfere with the subject agency's attempts to implement the law.[75]

## CONCLUSION

The Court finds that all three of the relevant factors weigh against the finding of an implied private right of action. Reylek is not a member of a class for whose especial benefit the statutes were enacted; there is no indication of legislative intent to create a private right or private remedy, as the statutes promote only a "general interest" in government compliance with the law, and they regulate the Department of Elections and the purchase and use of electronic voting systems, not individual registered voters; and an implied private right of action would not promote the statutes' purpose. Therefore, Albence's Motion to Dismiss Count 1 of the Amended Petition, requesting a declaratory judgment, is **GRANTED**. With this decision, all of Reylek's claims set forth in the Amended Petition have been dismissed.

---

[75] *Cf. O'Neill*, 2006 WL 205071, at *22 ("The challenge to the decision-making authority of the OSPC the Plaintiffs seek to assert would, if permitted, undermine the efficient coordination of land use planning and development these provision [sic] were enacted to promote.").

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP:tls
*Via File & ServeXpress and U.S. Mail*
oc:     Prothonotary
cc:     Terri Michelle Reylek, *Pro Se – Via U.S. Mail*
          Counsel of Record - *Via File & ServeXpress*